SAYER *et al.* v. DEVORE *et al., Appellants.*

1. **Pleading : PRACTICE.** Mere defects and informalities of statement in a pleading will be disregarded on appeal, where no demurrer or motion was interposed to it, and the question is presented under exceptions taken to the overruling of the objection to the introduction of evidence because the petition does not state facts sufficient to constitute a cause of action, and similar exceptions to the overruling of the motion in arrest of judgment.

2.   **Practice:** FINDING OF CHANCELLOR. The supreme court will defer somewhat to the finding of the chancellor in equity cases.

3.   **Fraud:** SETTING ASIDE DEED: CASE ADJUDGED. This case examined and the evidence *held* sufficient to warrant the trial court in setting aside certain deeds upon the ground of fraud and want of consideration.

*Appeal from Vernon Circuit Court.*—HON. CHAS. G. BURTON, Judge.

AFFIRMED.

*Phelps & Brown* and *E. C. Devore* for appellants.

(1)   Plaintiffs' petition does not state facts sufficient to constitute any cause of action against defendants, and the trial court erred in admitting, on the trial, over the objections of defendants, any evidence whatever, and in overruling defendants' motion in arrest of judgment. When a case is constituted of frauds, it must be fully stated of what the fraud consisted, and how it was affected. In all cases where the cancellation of a deed is sought, as in this case, courts of equity will not grant relief unless the court can see from the facts stated that the deed ought to be set aside. 1 Story Eq. Jur., secs. 203*c*, 694*a;* Kerr on Fraud and Mistake, 365, 366; Bigelow on Fraud, 450, 451; Bliss on Code Pleading, sec. 211; Nash on Code Pleading, 361, 362; *Curry v. Keiser,* 30 Ind. 214; *Joest v. Williams,* 42 Ind. 565; *McGindley v. Newton,* 75 Mo. 115; *Smith v. Sims,* 77 Mo. 269. (2) The evidence did not justify the finding of the trial court, and was not sufficient to sustain the decree. (3) The finding of the trial court and the decree is contrary to and against the evidence and the law. (4) The record conclusively shows that defendants were prevented by the acts of plaintiffs from performing the conditions of the contract as averred and shown by all the evidence, both of plaintiffs and defendants.

Sayer v. Devore.

*Wm.. Thompson, Kimball & January* and *Harding & Buller* for respondents.

(1) The statement and abstract of record as given by appellants do not include a true statement of this case. "This is an equity case, and the whole of the evidence should be given, unless the parties agree upon an abridged statement thereof," and no such agreement has been made. Rule 12, Supreme Court of Missouri. (2) The fraud and failure of consideration are sufficiently pleaded in this case, and the petition stated a good cause of action. Bliss on Code Pleading, sec. 211; *Blair v. Railroad,* 89 Mo. 334; Whittlesey's Mo. Practice, sec. 145a, subd. *h; Fox v. Webster,* 46 Mo. 181. (3) A cause of action, though defectively stated, is sufficient after finding and decree. Defendants, Devore & Wittich did not file and stand on a demurrer, but went to trial on the issue joined. *Blair v. Railroad,* 89 Mo. 334. (4) The slightest circumstances are admissible in questions of fraud. *Stewart v. Severance,* 43 Mo. 322; *Hopkins v. Sievert,* 58 Mo. 201. (5) Where the acts of a party operate as a fraud, even though done without a fraudulent intent, he cannot be permitted to reap any benefit from them. *Clarkson v. Creeley,* 40 Mo. 114. (6) The relation of trust and confidence existed between plaintiffs and defendants, as they were to assist as attorneys, in procuring a patent from the county, and nothing short of a complete discharge of such duty and relation will exonerate them from fraudulent concealment. Story Eq. Jur., secs. 204, 205, 207, 213–16, 220; 31 Vt. 101–17; Eng. Com. L. Rep. 290; 9 Ala. 662. (7) Every contract to be enforced must be founded upon a valuable or good consideration. W. S., sec. 1061; *Wesson v. Horner,* 25 Mo. 81; *Block v. Elliott,* 1 Mo. 275; *Mullanphy v. Reily,* 10 Mo. 489.

RAY, C. J.—This is a suit in equity, brought in the circuit court of Jasper county, and, by change of venue,

tried and determined in the circuit court of Vernon county, Missouri. A separate demurrer on the part of Jasper county was sustained, and the cause dismissed as to the county. The parties have submitted and acquiesced, so far as this record discloses, in the ruling in this behalf, and this branch of the case, so far as the county is concerned, is not before us.

The main object of the action is to set aside and hold for naught two certain quitclaim deeds from plaintiffs to defendants, Devore and Wittich, for some two hundred acres of land, upon the grounds that the deeds were obtained by fraud and without consideration. Upon the trial of the issues joined in this behalf between plaintiffs and said defendants, the court held that the deeds were falsely and fraudulently procured, and judgment was had in favor of plaintiffs, cancelling and setting them aside and awarding damages, etc., from which defendants, Devore and Wittich, have appealed.

At the trial, said defendants admitted that the land in controversy is a part of the swamp land selection sold by Jasper county to Geo. E. Ward; that A. C. Sayer, the ancestor of the plaintiffs, was the purchaser of the Ward interest in the lands in controversy, with other lands of said selection, and the equitable owner thereof at the time of his death, and that plaintiffs are all, and the only, legal heirs of the said A. C. Sayer, deceased. Said A. C. Sayer, the said ancestor of these plaintiffs, in 1867, it seems, gave his two promissory notes to Jasper county for the purchase price, and, in 1868, moved with his family onto the land, building thereon, and improving the same, his tract consisting of these lands in suit and other lands not involved. He resided thereon until his death, in 1875, and his widow and family thereafter continued to hold the possession thereof until 1882, when they were ousted under judgment and executions in favor of the county.

The judgment enforcing the vendor's lien in favor of the county was, we believe, afterwards set aside, the

same having been instituted against said Sayer after his death. There were also ejectment suits, perhaps, for the possession, and the litigation in its several forms lasted several years. There is evidence that these heirs, through their attorney, at various times tried to get the county court to issue them a patent for the lands upon the payment of the notes given by their ancestor for the purchase money, and that, for some reason or other, the county court refused and neglected to make them a deed. The testimony is, however, not uniform as to this, but considerably varied. Bowers, for example, who was the presiding judge of the county court, says that these plaintiffs never appeared before the court or made any tender of the balance of the purchase money, and that Thompson never claimed to represent these plaintiffs, but claimed to be the owner himself, and to be entitled to a patent for the land, without paying any part of the purchase money, and, if Bowers does not directly so say, he, at least, leaves it to be inferred, that the court refused to act in the matter for these reasons and because of its distrust of Thompson.

Thompson got a deed, as plaintiffs' evidence shows, to some two hundred and fifty acres of the five-hundred and sixty-acre tract from the heirs for his services rendered, and to be rendered, in the course of the litigation. We think it fairly appears that he was before the court a number of times claiming to be the owner of a part of the tract, and to act as legal agent and attorney for the heirs as to the residue. The two quitclaim deeds for the land in controversy, executed by plaintiffs, were one, or both, prepared or written in part by said Thompson, and bear date, July 9, and July 11, A. D. 1883, and were, on July 13, delivered by said Thompson, who is a lawyer, then living at Carthage, Missouri, to defendants, Devore and Wittich, likewise practicing attorneys at that point. The lands are well improved, and contain two orchards, one of fifty acres, spoken of by some of

the witnesses as the finest orchard in Jasper county. There is evidence to show that the valuation of ten thousand dollars, given in the amended petition, is not excessive. So far, there is little dispute, except as stated, material to the controversy, but these matters are, perhaps, somewhat useful in leading us more intelligibly to the disputed and controlling facts in the case.

The two versions as to the execution and delivery of said deeds are given in the pleadings, the subject of which it is, perhaps, necessary to give, particularly the amended petition, whose sufficiency is very earnestly called in question. The amended petition is quite lengthy, but in view of the facts heretofore stated, and especially the elimination of the county as a party to the controversy in this court, we can condense and abridge the allegations to their substance about as follows:—The amended petition charges that the lands covered by these quitclaim deeds are worth ten thousand dollars, and that the deeds were wrongfully and fraudulently obtained, and without any consideration therefor, and upon terms and conditions about as follows: That defendants, Devore and Wittich, were law partners in Carthage, Missouri, said Wittich being a brother-in-law to the presiding justice of the county court for said year 1883; that Devore and Wittich, well knowing the repeated tenders of the purchase money and of the delay and litigation between plaintiffs and the county court in this behalf, agreed with Wm. Thompson, attorney for plaintiffs, that, if plaintiffs would make the deeds mentioned, they would procure a patent to the land from Jasper county, pay one-half of the county's claim, according to said notes, and then pay one thousand dollars in money, and deed back one-half the lands, including the eighty acres on which the farm house stands, to Wm. Thompson in trust for plaintiffs, and Devore and Wittich were to have half of said lands on these terms for their services as per agreement with said

Thompson, which would give them about one hundred acres.

That soon after Devore and Wittich obtained said deeds they began to back out, and showed a disposition not to comply with their part of said agreement, and finally said they never intended to deed back any of the land or pay plaintiffs any money, saying "they didn't have to," as they had the deeds. That said Devore and Wittich have refused and neglected to procure a patent to said lands, or pay plaintiffs any money therefor, and they have ignored plaintiffs' rights under said agreement and asked the county court to patent all said lands to them, when they had previously asked said county court to patent half of said lands to Wm. Thompson, all of which said county court well knew, and that they procured wrongfully and collusively an order of the county court to be made to that effect, recognizing them as owners of all said land, except Judge Cook, one of the judges of said county court, who protested against the making of said order by the other two members of said court, and this the said county court wrongfully, fraudulently and collusively, with said Devore and Wittich, did, notwithstanding a suit had been previously brought by these plaintiffs against E. C. Devore and L. L. Wittich and Jasper county, to set aside the deeds to Devore and Wittich on account of their said frauds, and asking specific performance as to Jasper county, and the said order of said county court was wrongfully, collusively and fraudulently made, recognizing said Devore and Wittich as the owners of said land, after service was had on all of said defendants, and said order of said county court was wrongfully, fraudulently and collusively made for the sole purpose of cheating, swindling and defrauding these plaintiffs out of their just rights in said land.

The amended petition further charges that defendants, Devore and Wittich, have failed, neglected and

refused to perform their part of said agreement; that they are in possession of said land committing waste, etc., and, so far as necessary now to notice, prays for the cancellation of said deeds, for possession, damages, and any other and proper relief plaintiffs may be entitled to.

The separate answer of Devore and Wittich contains a general denial and two further answers as follows : 2. And for a further answer defendants say that they never at any time made any contract with the plaintiffs for the purchase of the lands mentioned in plaintiffs' petition, nor with one Wm. Thompson as the agent or attorney for said plaintiffs, or either of them, but the defendants aver and state the facts to be that they purchased from said Wm. Thompson the said lands described in the quitclaim deeds dated respectively, July 9, and July 11, 1883, and signed and acknowledged by plaintiffs and mentioned in said plaintiffs' petition as the sole individual lands of said Wm. Thompson and not as the lands of said plaintiffs or either of them, and the said Wm. Thompson, at the time he delivered the said quitclaim deeds to said defendants, stated that he was the *bona fide* owner of said plaintiffs' interest therein conveyed by said deeds, and had paid to said plaintiffs therefor five hundred dollars, being the full consideration as expressed in said deeds; that the said quitclaim deeds to the said lands were delivered to defendants by Wm. Thompson upon the following contract, and no other, to-wit: William Thompson came to defendant's law office, in the city of Carthage, who were then co-partners in the practice of law, and desired to retain and employ said defendants to get the county court of Jasper county to recognize the validity of the Ward contract to certain swamp lands, known as the A. C. Sayer lands, the equitable title to five hundred and sixty acres of which lands he then represented and stated he owned; that he had made

repeated efforts and applications to the county court to have said court recognize the validity of the said Ward contract, and make to him a patent to said five hundred and sixty acres of land, and the county court had refused so to do, and the said William Thompson then and there proposed to said defendants, if they would get the county court to recognize the validity of said Ward contract, that he would, in consideration of their services in said county court in that behalf, deed to said defendants one-half of said five hundred and sixty acres of land, which said proposition defendants accepted, and afterwards the said William Thompson, in pursuance of said contract, in payment of their agreed fee for their services, delivered to said defendants the said quitclaim deeds for their one-half of said five hundred and sixty acres of land, and which are the identical deeds mentioned in plaintiffs' petition; that said defendants rendered said legal services in said county court of Jasper county in said matter, for which they were employed, procured a recognition by said court of said Ward contract and fully performed all the conditions of the contract upon which they obtained the said quitclaim deeds from the said William Thompson.

III.   And for a further answer the defendants say that after the said quitclaim deeds mentioned in said plaintiffs' petition were delivered by plaintiffs to said Wm. Thompson, and, before their acceptance and delivery to said defendants by said Wm. Thompson, said defendants made inquiry of said plaintiffs if said deeds were their *bona fide* deeds and if said Thompson had paid to them the consideration mentioned in said deeds and plaintiffs informed defendants that they were their *bona fide* deeds, and that they had no interest in said lands, as they had sold all their interest to said Thompson, and he had paid to them the consideration therefor in full.

As before stated, the insufficiency of the amended petition, given in substance above, so far as the material controversy between the parties is concerned, is assigned as the first ground of error. We may premise that no demurrer, or motion of any sort was interposed, but the first and only pleading in the cause by defendants was their said separate answer quoted above in this opinion. Objection was made to the introduction of any evidence because the petition does not state facts sufficient to constitute a cause of action against said defendants for fraud, deceit or award of damages, and the question is before us under the exception taken to the overruling of this objection, and to a similar exception in overruling the motion in arrest of judgment. Presented in this form, mere defects and informalities or defective modes of statement in the pleading are cured, and are to be disregarded.

The allegations that the deeds were wrongfully and fraudulently obtained, in themselves, are, it is true, mere conclusions of law, and not a statement of the facts themselves, but the amended petition further states facts, which are abundantly sufficient, if true, to make a case in which a court of equity can, and ought to, find and decree relief. Wm. Thompson had long been, as already stated, the attorney of these plaintiffs in this litigation about the land, with the county, and continued to be such at this time, and it was to him, perhaps, they looked to protect their interest in this matter. But the amended petition charges that defendants associated themselves with said Thompson, and, under the various allegations in this behalf, the defendants, we think, occupied and assumed a fiduciary relation to plaintiffs, inasmuch as they undertook, as attorneys at law, in connection with Thompson, representing the interest of plaintiffs and themselves, to secure the patent from the county for the lands in dispute, and to that end, as the amended petition charges,

secured the deeds upon the express understanding that, in the event of success, they would pay one-half of the notes given to the county, by the ancestor of plaintiffs, for the purchase money, and one thousand dollars in money, and deed back to Wm. Thompson, also associated with them as attorney in the matter, one-half the land in trust for plaintiffs.

The plaintiffs, it is conceded, were the equitable owners of the land, as said heirs of A. C. Sayer, at, and prior to, the execution of these quitclaim deeds, and, notwithstanding the deeds are absolute in form, yet, under the allegations of the amended petition, the defendants were to acquire only a half-interest in the lands conveyed, and only in the event of their success as attorneys in securing the patent for the whole from the county. Whether the defendants intended in the first instance, at the time the deeds were given, to perpetrate a fraud on plaintiffs is, we think, immaterial and a failure to so charge in the petition makes, we think, no difference so far as the case before us is concerned. If defendants accepted said employment in connection with Thompson, and, after procuring the deeds to these valuable lands upon the conditions alleged, and, thereafter, repudiated its terms and conditions, and procured wrongfully and collusively with the court, as is charged, the order of the county court, recognizing them as the owners of all of said land, and took possession of the whole, and continued to hold the same, to the exclusion of plaintiff, then these facts are, we think, as between the parties in a direct proceeding of this sort, abundantly sufficient to constitute a good cause of action, and to authorize a court of equity to find and decree the proper relief.

But, again, defendants complain that the finding is not sustained by sufficient evidence, and is contrary to the issues and evidence in the cause. The practice and rule of this court is to defer somewhat in equity cases

to the finding of the chancellor. It will be sufficient for the present to say as regards defendants' evidence, that it supports very fairly the separate answers hereinbefore set out. Portions of it will be referred to in connection with parts of the evidence given in plaintiffs' behalf.

In the first place, we will notice the testimony in part of Wm. Thompson. He says that the names of the grantees were not in the deed, when plaintiffs signed and acknowledged them, but that the deeds were left blank, as they did not know who were to get the deeds, or what they were to get for the lands. That they were delivered with the understanding that he was to fill them out, and deliver them to whomever got the lands. That he wrote in the names of defendants and the consideration and delivered them to defendant. That plaintiffs never got any consideration for the deeds, and that he did not pretend to own the lands.

The plaintiffs, Lucinda Sayer, widow of A. C. Sayer, and Cox, a son-in-law, say that plaintiffs never received anything for the land, and corroborate Thompson, as to the blanks in the deeds at date of execution. So far as plaintiffs are concerned, the evidence in this behalf shows that they entrusted the whole matter to the discretion and judgment of their said attorney, Thompson.

Both sides say that Devore and Wittich were to have half the lands, the difference being that defendants claim that their share was to be half of the five hundred and sixty acres, whilst Thompson says it was to be half of the two hundred acres, that is, one hundred acres. But, in either view, the renumeration was so large and liberal, that, of itself, in connection with other facts, might well induce a court of equity to at least scrutinize the transaction with a view of satisfying itself that it was free from fraud. The services rendered for this valuable interest were, as we shall see, not arduous, but practically formal, and without legal difficulties.

But to proceed, Thompson says that after being before the county court, trying to get the court to take the purchase price and issue the patent, he met defendant Wittich, who told him that he, Thompson, had been trying a long time to get the land matter through, that the court would never do it for him, but that the presiding judge was his brother-in-law, and that he (Wittich) and his partner, Devore, could get the court to receive the balance due, and make the patent, if Thompson would divide and give them half. The matter being left to him by plaintiffs, Thompson says he then made the agreement set out in the amended petition. His testimony, as is conceded, fully supports the bill, but it is claimed in defendant's behalf, that this testimony is unworthy of credit. He is impeached by a number of witnesses, perhaps a dozen, who say his general reputation for truth and veracity and honesty is bad.

On the other hand, some seven or eight witnesses for plaintiff support his general reputation for truth and honesty, and say it is good, It may also be conceded that there is evidence on defendant's part, that, in the several trials, he has not always stated the agreement in precisely the same way, in one instance saying that defendants were to pay the one thousand dollars, or in lieu thereof, to deed back the land. He admits on his cross-examination that, on one of the trials, he testified that on one occasion in July, when before the county court, he stated that the quitclaim deeds were all right, that he had paid the consideration mentioned to plaintiffs, who then had no interest in the land, and that defendants were the *bona fide* owners thereof, but the witness says he did not understand the question. And again, in his answer, containing a somewhat similar and qualified admission, he says, in effect, that he was told by defendants to so state, and that his statements were a part of the plan agreed upon with defendants to

induce the court to issue the patent to himself and defendants.

These features, and perhaps others, it may be conceded, somewhat impair the value of his testimony. But at this time defendants and Thompson were operating harmoniously together, and, in their joint efforts to effect the common design, they were not very exact, to say the least of it, as we shall see, in their representations and dealings with the county court in the premises. But we do not see that there is such an absence of facts and circumstances, and independent testimony corroborative of Thompson's evidence, as counsel for defendants seems to suppose, or that the decree is based exclusively thereon. For example, the amended petition says that the defendants asked the county court to patent all of said lands to them, when they had previously asked said county court to patent half of said lands to Wm. Thompson. As to this, the evidence shows that, after, and on the very day, we believe, the quitclaim deeds were delivered to defendants, they wrote and filed a petition with the county court, a certified copy of which, offered in evidence by plaintiff, is as follows:

"In the Jasper county court. Devore & Wittich, and Thompson, *ex parte.*

"Now, at this day, come Devore and Wittich and Thompson, and represent that Henry A. Sayer, Edwin J. Sayer, J. C. Sayer, J. C. Grason, Ira Grason, Ellen C. Grason, Senora Grason, Viola Cox, H. Z. E. Cox and Lucinda Sayer, widow of A. C. Sayer, deceased. That A. C. Sayer, deceased, during his lifetime, purchased of said county the south half of the southwest quarter and northwest quarter of southwest quarter, and south half, southeast quarter and northeast quarter and northwest quarter, section 33, township 30, range 33, for which he executed his notes to said county; that, since the execution of said notes, said A. C. Sayer has departed this life, leaving said

parties surviving; that, by their deeds of conveyance made respectively on the —— and —— days of July, 1883, they have conveyed their interests in said lands to E. C. Devore and L. L. Wittich, and the said E. C. Devore and L. L. Wittich, by their quitclaim deed, conveyed undivided half interest in and to said land to Wm. Thompson; that there was due on said land the sum of $——, which amount the said E. C. Devore, L. L. Wittich and Wm. Thompson propose to pay said county. Whereupon they pray that the court make the order that in the premises recognizing the claim of the said parties, and upon the payment of said sum of money that the county deed or patent the said land, an undivided half interest to E. C. Devore and L. L. Wittich, and an undivided half interest to said William Thompson.

"(Signed.)     E. C. DEVORE and L. L. WITTICH,
                                "WILLIAM THOMPSON."

This is, we believe, the occasion previously mentioned when Thompson made the representation already noticed to the county court, as a part of the plan, as he testified to induce the county court to make the order to patent the land to Devore, Wittich and Thompson. Now then, except as to the payment of the thousand dollars, this petition corroborates, we think, Thompson's evidence, and supports the allegations of the amended petition herein, and is at all events wholly irreconcilable with the defendants' theory of the transaction as set up in their separate answer. For example, the answer says that defendants purchased the lands as the sole individual lands of Thompson, and not as the lands of these plaintiffs, but in this petition they represent that these plaintiffs by their deeds of conveyance made respectively on the —— and —— days of July, 1883, have conveyed their interest in said lands to Devore and Wittich. Again the petition in the county court says that defendants and Thompson propose to pay the

county the amount due on the land, which is not in the agreement as set up in the answer, but is embraced in the allegations of the amended petition and agrees with Thompson's evidence. And, lastly, the prayer of the petition in the county court is that the court recognize the claims of the parties, and patent an undivided half interest to the defendants and an undivided half interest to Thompson. Again Wilson, the county clerk, at that time testified, as we find from the record itself, that he heard Wittich testify that he took this first petition out and tore it up. Wittich testifies that he withdrew it by leave of court, and such, upon the evidence, seems to be the fact. At all events, in a few days after the suit at bar was instituted, and on August the eighth, following, being about one month after the filing the first petition, for themselves and Thompson, they filed a separate petition for themselves as follows:

"In the Jasper county court, Jasper county.

"Your petitioners, Devore and Wittich, respectfully represent they are the owners, as assignees of the Ward interest in the following lands lying in the county of Jasper and state of Missouri, and part of the original swamp land selection, to-wit: The southeast quarter of the southwest quarter, the west half of the southwest quarter and south half of the southeast quarter of sections 33, 30 and 33, containing two hundred acres, which they hereby propose to purchase of said county at the price agreed upon between said county and A. C. Sayer, whose interest they have acquired and now hold by quitclaim deeds.

"(Signed) DEVORE AND WITTICH.

"Filed, August 8, 1883."

By this second petition, it will be observed, defendants claim all the land in dispute, whereas in the first petition they claim only the undivided half interest, and they claim to have acquired the interest of A. C. Sayer and to hold the same by quitclaim deeds. Between the dates of filing these two petitions in the

county court, defendants and Thompson had fallen out and were hostile in their claims. In the meantime Thompson had brought the suit at bar, and when the defendants filed their said second petition, asking to be recognized as having succeeded to the entire interest of plaintiffs in the lands under two quitclaim deeds, Thompson was on hand protesting against the court so doing, and stating the claims of these plaintiffs and the terms upon which the deeds were delivered to defendants. From this time he seems to have acted with promptness and energy in the interest of plaintiffs. The court, we may observe, made the order recognizing the defendants as the owners, but did not issue any patent as the present suit had already been instituted at that time.

It may be remarked that the answer does not say anything about a patent or deed from the county, but charges that their undertaking was to get the county to recognize the validity of the Ward contract. Defendants' testimony is to like effect. But the transaction with A. C. Sayer, the ancestor of plaintiffs, in 1867, when the county accepted his notes for the purchase money, or for the balance thereof, would seem to be recognition enough of the Ward contract, especially as the county seems to have thereafter sought to collect the notes and to have foreclosed a vendor's lien on the land. The whole matter seems to have been, at this stage, merely formal, and it seems remarkable that there should have been so much delay and difficulty in issuing a patent, or deed to the heirs of said Sayer upon payment of the notes.

But again, the testimony of George Parry, the notary public, is, among other things, that the day the suit at bar was brought Wittich said: "I want you to hurry up. Thompson is bringing suit against me for this land, and I want to get the deed made before he gets the suit brought." He further says that he went with Wittich to his house to take his wife's acknowledgment, that he

was vexed at not finding her at home; and that, after they had gone back up town, Wittich, after a short time, returned and remarked, "It's too late now, he has sued us," and that Wittich then also said, "If I could have got that property out of my hands before he brought that suit, I would have made five thousand dollars."

Again, Parry says that defendant, Devore, on one occasion said, "they (that is Devore and Wittich) had a contract with Thompson by which they were to get a patent from the county, and that Thompson was to have half; that there was a section of land they were to get, but that they only got two hundred acres; that Thompson construed the contract that he was to have half the land they had got deed to, but that they construed the contract that, as there was to be a section of the land, they were to have a half section, and, as they had only got two hundred acres, he thought they would clean little Thompson up and rob him of all of it." The witness, Flanigan, also testifies to similar declarations on the part of Devore. He, Parry, further testifies that, at another time, when Devore had lost a small sum in a game of cards, he said, "he could stand it, as he had just robbed Thompson of five thousand dollars."

These extracts and this review, somewhat prolonged, must suffice. These features, as well as others, afford, we think, sufficient reason for not disturbing the finding of the trial court. Counsel for defendants ask whose fault was it that the contract, as alleged by plaintiffs, was not performed. We think the answer of defendants herein, their evidence in the cause and attitude generally in the premises, afford sufficient answer to that inquiry. The claim of defendants, that the evidence shows that plaintiffs abandoned their contract and prevented and put it out of the power of the defendants to perform it on their part, would have more weight and force if defendants were affirming and seeking to enforce the alleged agreement, instead of denying it and repudiating it *in toto*, as they are now doing. Thompson did, it is true,

protest to the county court against. the issue of the patent to the plaintiff, and but for his action in the premises, the county court would, in all probability, have issued the patent to defendants for all the lands, but it is plain enough that the defendants did not contemplate or intend to reconvey any part of it either to Thompson or to him in trust for the plaintiffs, but they intend to claim, as they are now doing, that they were the owners absolutely of all the land in controversy through purchase from Thompson.

As to the claim that the decree is inequitable because it ignores the rights of defendant to be made whole and awards plaintiffs the benefit of their labor, services and improvements, but little we think need be said. Defendants say that the evidence shows that they gave about a month's labor and attention to the matter, and succeeded in getting the county court to recognize the Ward or Sayer interest, and to make the order to patent the lands, which Thompson had in vain tried for years to get the court to do. But what, if this be all so, we ask if this has resulted in any benefit to the plaintiffs, and are they not on the other hand injured, if anything, by these exertions of defendants, since the court was induced to hold that these plaintiffs had parted with their interest, and that defendants had acquired it, and made the order recognizing defendants as owners? If, as the trial court has found, defendants falsely and fraudulently procured these quitclaim deeds to be made to them, then their said claim for services and claim of one hundred dollars for improvements on the lands are manifestly without merit, especially as they have been in possession of the land in the meanwhile, even though they may not have derived any rent from the land.

We are for the above, as well as other reasons, satisfied with the judgment in the cause, and it is, therefore, affirmed.

All concur.