## STRODE, Public Administrator, in charge Estate of CHRIS SHARP, v. GILPIN, Appellant.

### Division One, March 15, 1905.

1. **CONVERSION: Jurisdiction of Probate Court.** A suit by the administrator for the conversion of personal property belonging to the estate of a decedent has nothing to do with probate business, and the probate court does not have exclusive jurisdiction of such a suit, nor does a suit of that character infringe on the jurisdiction of the probate court.

2. ———: ———: **Partnership Estate.** After the public administrator had taken charge of the estate of a decedent, the defendant filed a bond in the probate court, as surviving partner of said deceased, which was approved, and thereafter the public administrator sued defendant in the circuit court for the conversion of certain assets alleged to be the individual property of deceased, and defendant in his answer thereto admitted possession of the assets and claimed the same belonged to a partnership of which he was the surviving partner and deceased the other partner. *Held*, that the filing of the bond in the probate court and its approval was not a judicial determination of the issue involved, which was whether the assets belonged to the individual estate of the deceased or to a partnership of which deceased and defendant were the partners; and the trial court having found that there was no partnership, and the evidence clearly supporting that finding, the judgment against defendant for the amount of the assets must be affirmed.

3. ———: ———: **Taking Charge of Estate.** The taking charge of the individual estate of the deceased by the public administrator in no way establishes or determines his or deceased's title to any particular personal property. That simply establishes his right to take possession of, sue for and recover any personal property belonging to the individual estate of deceased. It does not determine whether any particular property was the individual personal property of deceased.

4. ———: ———: ———: **Partnership Property: Bond.** The filing of a bond by the defendant as surviving partner and its approval by the probate court does not determine or establish his title as surviving partner to any particular personal property; it simply determines his right to take possession of, sue for and recover any personal property belonging to the partnership existing between deceased and the surviving partner,

and leaves open the matter of determining whether certain particular assets belong to the individual estate of deceased or to the partnership estate.

5. ———: **Partnership or Individual Assets: How Determined.** To determine whether certain personal property is assets of a partnership or belongs to the individual estate of deceased a suit for the conversion of assets may be brought in the circuit court by the administrator in charge of the individual estate of the deceased against him who claims such assets as administrator and surviving partner of the partnership estate. And a finding that there was no partnership, is a determination of the issue.

Appeal from St. Louis City Circuit Court.—*Hon. Wm. Zachritz,* Judge.

AFFIRMED.

*Campbell & Thompson* for appellant.

(1) The court had no jurisdiction in this case for the reason that when Gilpin filed his affidavit and bond as surviving partner, and the probate court approved said bond, there was necessarily a finding and judgment by the probate court that Charles S. Gilpin was the surviving partner of the Union Station Cigar Company, and this judgment can not be collaterally attacked. In re Estate of Alice C. Judy, 166 Mo. 15; Covington v. Chamberlain, 156 Mo. 587; Sherwood v. Baker, 105 Mo. 475; Johnson v. Beaseley, 65 Mo. 250; Camden v. Plain, 91 Mo. 129; Rottman v. Schmucker, 94 Mo. 139; 1 Woerner, Admr., secs. 328-330. And thereafter Gilpin's relation to said partnership estate was the same as though he had taken charge of it under letters of administration, and his authority to hold said property as surviving partner can not be collaterally attacked. R. S. 1899, sec. 67; 2 Black on Judgments, sec. 639; Vermillion v. St. Clare, 89 Mo. App. 55; 1 Woerner, Admr., sec. 156. (2) The circuit court has no jurisdiction to try the question of partnership

presented in this case for the reason that, as Gilpin had given his bond as surviving partner for the purpose of administering the estate of the Union Station Cigar Company, and said bond had been approved by the probate court, Gilpin and the property of said firm had passed under the exclusive original jurisdiction and control of the probate court, and the question of partnership here presented is a question the decision of which must be originally made by the probate court. It is a matter "pertaining to probate business," and over all matters pertaining to probate business the Constitution and laws of the State have given exclusive jurisdiction to the probate court.  Const., art. 6, sec. 34; R. S. 1899, sec. 1753; State ex rel. v. Withrow, 141 Mo. 69; James & Dixon v. Jewett, 21 Mo. 538; Ensworth v. Curd, 68 Mo. 282; Caldwell v. Hawkins, 73 Mo. 451; Cook v. Lewis, 36 Mo. 340; Putnam v. Parker, 55 Me. 235; Lietman's Executor v. Lietman, 149 Mo. 117; 1 Woerner on Administration, p. 300.  (3)  Gilpin, having given bond as surviving partner satisfactory to the probate court, took the property of the partnership estate in charge, and said property then became *in custodia legis* and could not be taken out of his possession until the probate court, in the exercise of its general jurisdiction over the administration of said estate, should remove said Gilpin and revoke his authority, and require him to turn over said property to Sharp's administrator.  Bank v. Field, 156 Mo. 310; Drake on Attachments, sec. 251; White v. Schloerb, 178 U. S. 542.  (4)  Plaintiff's plain, adequate and complete remedy was to apply to the probate court to revoke Gilpin's authority and require him to turn over to plaintiff the assets of the Union Station Cigar Company, and upon that court's refusal so to act to appeal.  1 Woerner on Administration, sec. 299; 1 Woerner, marg. pp. 1203, 1204; State ex rel. v. Withrow, 141 Mo. 69; Vermillion v. St. Clare, 89 Mo. App. 55; R. S. 1899, secs. 278, 279.

*Johnson, Houts, Marlatt & Hawes* for respondent.

(1) There was no adjudication of the question of partnership in the probate court; hence the question was not *res adjudicata,* but was open to inquiry in this proceeding. (a) At common law, upon the death of a member of a partnership, the survivor or survivors had the right to administer as surviving partner or partners, on the partnership estate. No one else had the right and it was a duty as well as a right; and they administered as survivors, not as administrators. Lindley on Partnership (2 Am. Ed.), p. 591; Emerson v. Senter, 118 U. S. 8; Bates on Partnership, sec. 715; Woerner on Administration, sec. 124; Easton v. Courtright, 84 Mo. 31; 22 Am. and Eng. Ency. Law (2 Ed.), 220. (b) The statutes have not changed nor taken away this right of a surviving partner to administer as surviving partner, and his rights and status as surviving partner are fixed not by any appointment or act of the probate court, but by devolution of law. R. S. 1899, secs. 56, 57, 59, 61, 64; Green v. Virden, 22 Mo. 511; Bredow v. Mutual Savings Institution, 28 Mo. 185; Easton v. Courtright, 84 Mo. 31; Denny v. Turner, 2 Mo. App. 55; Hargadine v. Gibbons, 45 Mo. App. 469; Holman v. Nance, 84 Mo. 678; Crook v. Tull, 111 Mo. 289; Hargadine v. Gibbons, 114 Mo. 565; Goodson v. Goodson, 140 Mo. 215; Hays v. Odom, 79 Mo. App. 428; 1 Woerner, Administration, par. 130. (c) The status of a surviving partner being fixed by law, there is nothing for a probate court to pass upon in the inception of partnership administration, and nothing is *res adjudicata* in this case by reason of any act of that court. (2) If the probate court could by its action confer upon surviving partners the right to administer upon partnership assets, then under our statute the existence of a partnership would be a jurisdictional fact and open to inquiry at any time. The analogy of the

question of death being jurisdictional is perfect.   Ins.
Co. v. Tisdale, 91 U. S. 238; Scott v. McNeal, 154 U. S.
49; Griffith v. Frazier, 8 Cranch 9; 11 Am. and Eng.
Ency. Law (2 Ed.), 759; Woerner, Administration, par.
207; 1 Freeman on Judgments, p. 186.   Another anal-
ogous jurisdictional question is that of property being
within the jurisdiction of the court granting letters; if
not, the letters are void.   Woerner, Administration, par.
205; Miller v. Jones' Admr., 26 Ala. 247; Christy v.
Vest, 36 Iowa 285.   (3)   Defendant forfeited the right
to claim that the question of partnership was *res adjud-
icata* by voluntarily going into the question as an open
one on the trial.   He can not rely upon a judicial de-
termination of an issue by way of an estoppel and also
upon proof of the facts upon which the determination
was based.   Megerle v. Ashe, 33 Cal. 84; House v. Lock-
wood, 17 N. Y. Supp. 817; Seymore v. Hubert, 92 Pa.
St. 501; Seckel v. Norman, 78 Iowa 261; Bast v. Hysom,
6 Wash. 171; Donnell v. Wright, 147 Mo. 648; Clark v.
Bettelheim, 144 Mo. 270; Van Fleet, Former Adjudica-
tion, p. 509; McArthur v. Oliver, 53 Mich. 302.   (4)
Having assumed in the trial court the position that the
question at issue was whether or not a partnership ex-
isted, defendant can not shift his position on appeal.
He can not, after leading counsel and trial court to try
the issue of partnership as an open question, and after
being beaten on that issue, shift his position on appeal,
and claim that the question was previously adjudicated.
Bray's Admr. v. Seligman's Admr., 75 Mo. 29; Hall v.
Goodnight, 138 Mo. 576; Hill v. Drug Co., 140 Mo. 439;
Stewart v. Outhwaite, 141 Mo. 570; Estes v. Hill, 163
Mo. 395; Mirrielees v. Railroad, 163 Mo. 486.   (5)   The
further question of the ownership of particular prop-
erty was not and could not be decided at the threshold
of administration.   Property rights are never adjud-
icated nor status of property fixed by grant of letters
of administration.   That is left to a court of general
jurisdiction—in this State the circuit court.   Woerner,

Administration, pars. 151, 263; Grimes v. Talbert, 14 Md. 169; Estate of Nugent, 77 Mich. 500; Estate of Mc-Carthy, 81 Mich. 460; Biemuller v. Schneider, 62 Md. 547; Cayler v. Cayler, 4 Redf. (N. Y.) 305; Marston v. Paulding, 10 Paige Ch. 40; Wadsworth v. Chick, 55 Tex. 241. There is nothing in the contention that the property was *in custodia legis;* administrators may be guilty of conversion and may be sued in replevin, trover or conversion for property which does not belong to them, just as other persons having illegal possession of property, and the proper forum to try those property rights is the circuit court. Cobbey, Replevin, par. 432; Rose v. Cash, 58 Ind. 278; Marston v. Paulding, 10 Paige Ch. 40; Cayler v. Cayler, 4 Redf. (N. Y.) 305; 24 Am. and Eng. Ency. Law (2 Ed.), 505; Brammell v. Cole, 146 Mo. 70.

BRACE, P. J.—On the eighth of February, 1901, one Chris Sharp of the city of St. Louis died intestate, and on February 11, 1901, Gerrard Strode, public administrator of the city of St. Louis, took charge of his estate under the statute, and afterwards on the sixteenth of March, 1901, instituted this suit against the defendant Charles Gilpin for the conversion of certain assets, alleged to be the property of said deceased, of the value of $13,831.78.

On the fifteenth of February, 1901, the defendant Charles S. Gilpin filed bond in the probate court of the city of St Louis as surviving partner of the said Sharp deceased, which was approved by the said court, and in his answer to the plaintiff's petition admitted possession of the assets and claimed the same as surviving partner of the said Sharp, deceased. Issue was joined by reply. The case was tried by the court without a jury. The issues were found for the plaintiff. Judgment was rendered in his favor against the defendant for the sum of $14,564.85, and the defendant appealed.

The assets in question consisted of:

| | |
|---|---:|
| Cash on hand .................$ | 1,500.23 |
| Cash in American Exchange Bank. | 9,021.19 |
| Goods and chattels of the value of.. | 3,310.36 |
| Total ........ ...... ...... $ | 13,831.78 |

These assets were, nominally, the assets of the "Union Station Cigar Company," under which name a business had been carried on at the Union Station in the city of St. Louis from April 1, 1895, until the day of the death of said Sharp, February 8, 1901.

The evidence for the plaintiff tended to prove that the said Sharp was in fact "The Union Station Cigar Company." That he furnished all its capital, received its profits, bore its losses, and at the time of his death was the sole owner of all its assets. That the defendant conducted the business for him at the station as his employee at a salary of one hundred and twenty-five dollars a month, and during the last two years was allowed in addition a commission of ten per cent on the net profits of each of those years, all of which was promptly paid him before the death of said Sharp.

The evidence for the defendant in the main consisted of loose declarations of the deceased made in casual conversations testified to by several witnesses, to the effect that he was going to give defendant an interest or partnership in said business, that he had given him a partnership therein, that he was a partner in said business, and remarks of like character.

The trial court, by its rulings and judgment, in effect held that no partnership between the deceased and the defendant in said business ever existed, and that the assets in question were the individual property of the said Sharp at the time of his death.

The finding of the court is not only supported by evidence, but by the weight of the evidence, and the judgment of the circuit court should be affirmed, unless the main contention of counsel for the defendant can be maintained, as we find no error in the trial affecting

the merits of the case. This contention, as summarized in the conclusion of the brief of the learned counsel for defendant, is as follows:

"That Gilpin, having given bond as surviving partner and that bond having been approved by the probate court:

"(1) The probate court has found that Gilpin is surviving partner, and that finding can not be collaterally attacked. His relation to the property in question is the same as if letters of administration had been granted him, and his authority can not be collaterally impeached.

"(2) He and the property of the Union Station Cigar Company are within the exclusive original jurisdiction of that court as to all matters pertaining to the probate business of said estate.

"(3) The property in question is *in custodia legis,* and therefore:

"(4) The circuit court had no jurisdiction to collaterally attack the action of the probate court, or to deprive it of the power and jurisdiction given it by the laws of the State, by finding that Gilpin is not a surviving partner."

The argument of counsel in support of this proposition covers a wide field and many authorities are cited in their brief, but in the view we take of this case, it is unnecessary to follow the lengthy argument, or review the numerous cases cited, as the application of a few well-recognized principles of law which need not even be formally, or at length stated, is decisive of the case. The contention in its general scope seems to be the combination of a plea of *res adjudicata* and to the jurisdiction of the circuit court, made for the first time in this court, and counsel for respondent insists that, as no such defense was in any manner tendered or made in the lower court, the defendant ought not to be allowed to make it here. But the decision may be placed on broader grounds.

The St. Louis City Circuit Court is a court of general original jurisdiction, and as such, has jurisdiction of all actions at law or in equity except such as have been taken out of that jurisdiction by positive law. By that law, "jurisdiction over all matters pertaining to probate business, to granting letters testamentary and of administration, the appointment of guardians and curators of minors and persons of unsound mind, settling the accounts of executors, administrators, curators and guardians and the sale or leasing of lands by administrators, curators and guardians" (Const., art. 6, sec. 34) are taken out of the general jurisdiction of circuit courts and vested in the probate courts. The judgments of the courts of each of these classes in matters within the limit of their respective jurisdictions are as conclusive as the judgments of the other.

This suit is a plain action at common law for the conversion of personal property; it has nothing to do with probate business, the granting of letters or the administration of estates, etc. The fact that the plaintiff and defendant are parties to the suit in their representative character, the one as administrator and the other as surviving partner, in no way affects the character of the action, of which the circuit court had jurisdiction beyond question.

When Chris Sharp died, the title to his individual personal property passed to and vested in his personal representative who in this case is the plaintiff, and the title which he had in any property as the partner of another passed to and vested in his surviving partner, who in this case is the defendant; in each case for the purpose of administration. The taking charge of the individual estate of the deceased by the plaintiff as public administrator, in the very nature of things could in no way determine or establish his or the deceased's title to any particular personal property. So on the other hand, the filing of a bond by the defendant as surviving partner and its approval by the probate

court, could not determine or establish his title as surviving partner to any particular personal property. All that either of these acts could do was to establish the *status* of each of these parties *quoad* the property of the deceased.

By one of them, the right to take possession of, sue for and recover any personal property belonging to the individual estate of the deceased was vested in the plaintiff, and by the other the right to take possession of, sue for and recover any personal property belonging to the partnership estate was vested in the defendant, and in each case for the purpose of administration; with the correlative right in each of respectively suing for and recovering the value of any such property that might have been converted. And that they might do so, the circuit court was as much open to them as to any other litigant, whether it became necessary that the action should be brought by one against the other, or by either of them against some other litigant, for neither of these acts could determine that any particular property belonged to one estate or the other, nor the right of one as against the other, nor as against any other person to such property; nor could either or both of them bring any property of either estate *in custodia legis.*

The issue presented and tried in this case in the circuit court was whether the assets in question were the individual property of Chris Sharp, deceased, or the property of a partnership of which the defendant was the surviving partner, and not whether the defendant was a surviving partner of Chris Sharp. His position or status as a surviving partner was conceded and the court found that as such he had no title to the assets in question, because those assets were in fact the individual assets of Chris Sharp, and not the assets of a partnership between him and the defendant of which the latter was the survivor. Full faith and credit was given to the proceedings in the probate court for

all they were worth, and its jurisdiction was in no respect infringed upon by the circuit court, in hearing and determining the case. The case was properly tried, the judgment is for the right party, and ought to be affirmed, and it is accordingly so ordered. All concur.