In re WARNER WHITLOW, Deceased; JOSEPH W. SKINNER, Administrator, Respondent, v. ADDIE L. WHITLOW, Appellant.

St. Louis Court of Appeals, November 4, 1913. Opinion Modified and Motion for Rehearing Overruled June 20, 1914.

1. PARTNERSHIP: Creation. Whether a partnership exists is a question of intention on the part of the parties, which must be arrived at from the contract itself, for such relation exists only by agreement of the parties.

Skinner v. Whitlow.

2. ——: ——: Contracts: Construction. The question of whether parties who enter into a written agreement thereby formed a partnership must be determined from an ascertainment of their intention as expressed in the agreement; but, in construing the contract, regard should be had to the surrounding circumstances, where resort to the latter is necessary to arrive at the real intention of the parties.

3. ——: ——: ——: ——. A contract between a person who had previously entered into a contract to do certain work and another person, by which it was agreed that the latter should superintend the work, and that, in consideration thereof, the profits should be equally divided, did not create a partnership between them.

4. CONTRACTS: Construction. In construing a written contract, the court must ascertain the actual intention of the parties as expressed therein.

5. PARTNERSHIP: Creation: Sharing Profits. The rule that the sharing of profits raises a prima-facie presumption of a partnership as between the parties, is applicable only where there is no proof of the actual agreement between them, and where there is such proof, the question of whether or not a partnership exists must be determined therefrom.

6. EVIDENCE: Presumptions: Overcoming Presumption. Presumptions do not arise or obtain when the facts themselves are at hand.

7. PARTNERSHIP: Evidence: Conclusions. Testimony that two persons were partners is merely a statement of a conclusion, and hence does not possess any probative force.

8. WITNESSES: Competency: Transactions with Deceased Persons. In an action in which there was an issue as to whether a partnership existed between two persons, one of whom was dead, the survivor was incompetent to testify concerning such issue, under Sec. 6354, R. S. 1909.

9. ——: ——: ——: Waiver. On the hearing of exceptions to the final settlement of a surviving partner as administrator of a partnership estate, the exceptor introduced portions of the referee's report in another proceeding instituted against the estate, in which the question as to whether a partnership existed between the administrator and the deceased person was in issue, for the purpose of establishing that the question of the existence of such partnership was res adjudicata. The trial court stated that the entire report would be considered in evidence, and that his attention might be called to such parts as counsel deemed necessary. The report contained testimony of the administrator, concerning the relations

Skinner v. Whitlow.

between himself and decedent, which the referee erred in admitting, under Sec. 6354, R. S. 1909, in view of the fact that the other party to the transaction was dead. *Held*, that the fact that the report of the referee contained the incompetent evidence of the administrator did not constitute a waiver by exceptor of his incompetency in the present case, since the report was introduced for the sole purpose of establishing the plea of *res adjudicata* and not for general purposes.

10. **APPELLATE PRACTICE: Presumption of Correct Action of Trial Court.** Where a cause is tried by the court without a jury, it will be presumed, on appeal, that incompetent testimony contained in the report of a referee in another case, which was received in evidence, did not have any influence on the court, especially in view of the fact that the court excluded like testimony sought to be introduced.

11. **EXECUTORS AND ADMINISTRATORS: Administration by Surviving Partner: Res Adjudicata.** The granting of letters of administration to one as a surviving partner is not *res adjudicata* as to the existence of a partnership between him and decedent, as against one interested in decedent's estate, and while his appointment is good until set aside and affords him protection in administering upon the putative partnership estate, his title to the assets is but a qualified one, and he holds them as trustee for those entitled to participate therein.

12. ——: **Validity of Appointment: Collateral Attack.** An order of the probate court granting letters of administration is not subject to collateral attack.

13. ——: **Allowance of Credits: Premium for Bond.** An administrator is not entitled to credit for the premium paid by him for his bond.

14. ——: ——: **Attorney's Fees.** An administrator is entitled to credit for reasonable attorney's fees incurred for legal services rendered the estate, including fees for defending a settlement against exceptions to credits taken by the administrator.

15. ——: ——: **Presumption of Reasonableness.** An allowance made an administrator by the probate court for expenses incurred on behalf of the estate will be presumed to be reasonable by the appellate court, where no evidence to the contrary was introduced in the circuit court, on appeal from the probate court.

16. ——: ——: **Advancements by Administrator.** A credit, allowed by the probate court on final settlement of an administrator, for moneys advanced to the estate, must be presumed to be proper, in the absence of any evidence to the contrary.

17. ——: **Administration by Surviving Partner: Allowance for Uncollectible Debts.** Sections 240 and 241, R. S. 1909, authoriz-

ing the probate court to give credit to an administrator for
debts charged in the inventory as due the estate, where it 'is
satisfied that the debt could not be collected by due diligence,
etc., are applicable to partnership assets by reason of section
99, and the administrator of a partnership estate is entitled to
credit for debts, charged in the inventory as due the estate,
where the same could not be collected by the exercise of due
diligence.

18. ————: **Allowance of Credits: Attorney's Fees: Defense of
Personal Interests.** An administrator cannot, as a general
rule, be allowed counsel fees incurred for services rendered
in defense of his own personal interest, or where the litigation
is in reality between the beneficiaries, and not for the benefit
or in the interest of the estate as a whole.

19. ————: ————: ————: ————. Where, on final settlement
of an administrator of a partnership estate, the principal ques-
tion litigated involved the distribution of assets remaining in
the administrator's hands, and, on the facts disclosed, the
objector to the settlement was entitled to all of such assets,
the administrator was not entitled to counsel fees for defend-
ing the settlement against the claim of the objector.

20. ————: ————: ————: ————. The court, on final settle-
ment of an administrator, should, in determining the question
of allowance of counsel fees, distinguish between counsel fees
chargeable against the estate and those for which the admin-
istrator is personally liable.

Appeal from St. Louis City Circuit Court.—*Hon. W. B.
Homer,* Judge.

REVERSED AND REMANDED (*with directions*).

*W. M. Williams* and *John Cosgrove* for appellant.

(1) Mr. J. W. Skinner had no interest in the body
of the estate upon which he sought to administer. The
only interest he had was in the profits, if there were
any, and as there were no profits the trial court erred
in allowing one-half of the estate which had been put
into the venture by Mr. Whitlow, alone. Mr. Skin-
ner risked nothing. He was not liable for any losses
in the venture, he contributed nothing but his time as
superintendent of the work, and was therefore not a

partner of Mr. Whitlow. Hughes v. Ewing, 162 Mo. 295; Thompson v. Holden, 117 Mo. 118; Kellog Newspaper Co. v. Farell, 88 Mo. 594; Glore v. Dawson, 106 Mo. App. 107; Campbell v. Dent, 54 Mo. 325; Bank v. Outwaite, 50 Mo. App. 124; Sawyer v. Burris, 141 Mo. App. 117; Mingus v. Bank of Ethel, 136 Mo. App. 407; Chapin v. Cherey, 147 S. W. 1092. (2) "If there was a partnership it was only in the 'profits.' The trial court erred in distributing to Skinner one-half of the 'outfit' used in doing the work and which belonged to Whitlow individually." Had a partnership existed between Whitlow and Skinner at the time the agreement was entered into July 11, 1901, the subsequent bankruptcy of Mr. Skinner dissolved the partnership if one existed, and the interest of Mr. Skinner, whatever it was, passed by operation of law to the trustee in bankruptcy. Scruby v. Norman, 91 Mo. App. 522; Kennedy v. Loan Co., 100 Mo. App. 269; Section 70, Bankruptcy Act; Howard v. Scott, 225 Mo. 718. (3) The judgment of the circuit court of the city of St. Louis, rendered Feb. 3, 1908, wherein Mrs. J. W. Skinner was plaintiff v. J. W. Skinner, administrator of the alleged partnership estate of Warner Whitlow, Addie L. Whitlow, interpleader, was a complete settlement and determination of the existence of the partnership between Warner Whitlow and J. W. Skinner and the trial court erred in refusing to declare the law as prayed by appellant in her instructions; and also erred in declaration of law given at the request of respondent. Garland v. Smith, 164 Mo. 22. It was necessary for counsel for Mrs. Skinner, in her suit against respondent herein, to establish the existence of a partnership between Warner Whitlow and J. W. Skinner, her husband, and the fact that Mrs. Skinner is not a party to this proceeding does not destroy or weaken the force and effect of the prior adjudication that no partnership existed between Warner Whitlow and J. W. Skinner. 24 Am. & Eng. Ency. of Law (2 Ed.), 217;

Nave v. Adams, 107 Mo. 420; Summett v. Realty & Brokerage Co., 208 Mo. 501; Womach v. St. Joe, 201 Mo. 467; 24 Am. & Eng. Ency. of Law (2 Ed.), 733. (4) The claim of Mrs. Skinner, had it been allowed, would have absorbed the whole of the partnership estate of Warner Whitlow. The claim was really and in fact that of J. W. Skinner, and he did all he could to have said claim allowed and the principle applies that "one who by consent permits a matter to be litigated in another's name who is only nominally interested in the matter is bound by the judgment rendered therein." Burris v. Gavin, 118 Ind. 320; Sauls v. Freeman, 12 Am. St. Rep. 190, 24 Fla. 209. Mr. Skinner was an "adversary party" and as he claims he was a partner of Mr. Whitlow, and therefore interested as a real defendant in the suit brought by his wife and was resisting a claim which, if allowed, would be in part paid with his property, then the question of the existence of such partnership was tried and determined in the former proceeding and cannot again be litigated here. City of Springfield v. Plummer, 89 Mo. App. 515; Summett v. Realty & Brokerage Co., 208 Mo. 501. (5) We are not attacking the judgment of the probate court of the city of St. Louis by which Mr. Skinner was appointed administrator of the alleged partnership estate of Warner Whitlow, deceased. The judgment of the probate court vested in Mr. Skinner the title to the property in trust, only for those really entitled thereto. His title is a qualified one. Byers et al. v. Hicks, 105 Mo. App. 72; Richardson, Admr. v. Coles et al., 160 Mo. 372. The appointment of J. W. Skinner as administrator of the so-called partnership estate did not charge, or in any way change the title to the property, nor did the filing of a bond by Mr. Skinner as surviving partner and its approval by the probate court in any way determine or establish his title as surviving partner. This is really a proceeding to recover personalty which belongs to appellant. Her

title is not affected by any act of the probate court. Strode v. Gilpen, 187 Mo. 391 and 392. (6) The credits allowed Mr. Skinner for expenses incurred after he was appointed administrator should not have been allowed. Appellant objected to the allowance of $1321.85 expenses paid out for blacksmithing, labor, etc.; he had no right as surviving partner to continue the business with the partnership effects. Roberts v. Hendrickson, 75 Mo. App. 484; Richardson v. O'Connell, 88 Mo. App. 12.

*Frank H. Haskins* for respondent.

(1) The issuing of letters to Joseph W. Skinner was *res adjudicata* as to the existence of a partnership and until set aside by a direct proceeding had the force and effect of a judgment. This judgment could only be set aside by a direct proceeding to revoke the letters and could not be attacked in a collateral proceeding. Vermillion v. Le Clur, 89 Mo. App. 55; Riley v. McCord, 24 Mo. 265; Johnson v. Beazley, 65 Mo. 250; Dunn v. German Am. Bank, 109 Mo. 101; Geisel v. Jones, 123 Mo. App. 45; Branford v. Wolf, 103 Mo. 391. The written contract introduced in evidence was prima-facie evidence of a partnership between Skinner & Whitlow. Torbert v. Jeffrey, 161 Mo. 645; Lengle v. Smith, 48 Mo. 276; Pettee v. Appleton, 114 Mass. 114; Steckman v. Gault State Bank, 126 Mo. App. 664; Glore v. Dawson, 106 Mo. App. 107. (3) The judgment rejecting the claim of Mrs. Skinner against the estate was not *res adjudicata* against Joseph W. Skinner on the question whether a partnership existed between himself and Warner Whitlow. Perkins v. Goddin, 111 Mo. App. 442; State to use v. Hollinshead, 83 Mo. App. 682; McBurnie v. Seaton, 111 Ind. 56; Furlong v. Banta, 80 Hun, 248; Johnson v. Graves, 129 Ind. 128; McMahan v. Geiger, 73 Mo. 145; Jones v. Vert, 121 Ind. 142; Leaman v. Sample, 91 Ind. 236;

City of Springfield v. Plummer, 89 Mo. App. 515. (4) In the absence of agreement the partners are presumed to share equally. Miller v. Hale, 96 Mo. App. 427. (5) If the property held by Skinner as administrator of the partnership estate was not in fact the property of the partnership then the proper remedy of those claiming it is an action against Skinner for conversion and not by excepting to his final settlement. Strode v. Gilpin, 187 Mo. 383. (6) An attorney fee may be allowed for defending exceptions in the circuit court. Jacobs v. Jacobs, 99 Mo. 427; In re Meeker's Est., 45 Mo. App. 186.

ALLEN, J.—This is an appeal from a judgment overruling exceptions of appellant, the widow of Warner Whitlow, deceased, to the final settlement of respondent, Joseph W. Skinner, as administrator of the partnership estate of "Warner Whitlow;" the respondent having administered thereupon as the surviving partner. The record discloses that, some time prior to his death, Warner Whitlow had a contract for doing certain railroad work in the State of Arkansas, and that, for the purpose of carrying out this said contract, he entered into an agreement with respondent Skinner, as follows:

"This agreement made this 11th day of July, A. D. 1901, by and between Warner Whitlow, party of the first part and J. W. Skinner, party of the second part, Witnesseth: That said Warner Whitlow having entered into a contract with J. H. Reynolds & Co. to do the pile driving, bridging and pipe laying on the White River Railway to about Sta. 1010 and the spur track to the phosphate mine and whereas the said Whitlow is desirous that the said J. W. Skinner shall superintend the construction of said work, therefore it is mutually agreed between the parties hereto, that in consideration of the said J. W. Skinner superintending said work the profits arising from said work are to be

equally divided between the said Warner Whitlow and J. W. Skinner.''

After the completion of the railroad work in question, the "outfit" used in doing the same, and which consisted of tools, horses, scrapers, pile drivers, etc., was brought to the city of St. Louis. Whitlow died on the 28th day of July, 1904, and thereafter Skinner applied to the probate court of the city of St. Louis for letters of administration as his surviving partner. Such letters were granted to respondent as the surviving partner, and later the property here involved was sold by order of the probate court. It appears that Mrs. Skinner, wife of respondent, presented a claim against the partnership estate for a sum in excess of $1500. Her claim was allowed by the probate court for $1207.05, and from the judgment allowing the same the appellant herein appealed to the circuit court. The latter court referred the cause to a referee who, upon reporting to the court, recommended the allowance of a portion of this claim. In passing upon exceptions to the referee's report, the court found that the referee erred in holding that a partnership existed between respondent and Whitlow, and ordered and adjudged that the claimant, Mrs. Skinner, take nothing by her suit. From the latter judgment of the circuit court Mrs. Skinner was granted an appeal to this court, but her appeal was thereafter dismissed for failure to prosecute the same, and the judgment of the circuit court in the premises became final. Thereafter the respondent, as administrator, filed his final settlement of the alleged partnership estate in the probate court. In this settlement the respondent charged himself with cash on hand amounting to $2317.30, and took credit for the following disbursements:

"Advertising final settlement, $5.25; attorney's fee, $100; probate court costs, $12.50; bond premium, $5; 'return of cash advanced by Joseph W. Skinner, $99.59;' 'accounts of no value, $1321.85.' ''

These credits totaled $1544.19, leaving a balance of $773.11. The probate court approved this settlement, and made an order of distribution, to the effect that Skinner, the respondent, should retain one-half of the balance in his hands and pay over the remaining one-half thereof to the appellant, Addie L. Whitlow, executrix of the last will and testament of Warner Whitlow, deceased. The appellant herein filed exceptions in the probate court to the final settlement, which that court overruled. Appellant thereupon appealed therefrom to the circuit court where all of her exceptions were overruled, except as to the item of $5, for which the respondent had taken credit for payment of a premium on his bond as administrator, and the respondent was ordered to pay appellant one-half of the balance in his hands, subject to the payment of costs, and $100 allowed by the court as a fee to the administrator's attorney for services herein in the circuit court. From this judgment the appellant prosecutes her appeal to this court.

I. Whether the ruling of the circuit court in the matter of Mrs. Skinner's claim against the estate, to the effect that no partnership existed between Whitlow and Skinner, was *res adjudicata* as to that question between the parties to this action, as is insisted by learned counsel for appellant, it is unnecessary for us to decide.

II. Whether a partnership existed is a question of intention on the part of the parties, which must be arrived at from the contract itself; for such relation springs, if at all, from an agreement of the parties evidencing an intention to enter into the same. Where, as here, a written agreement has been entered into, the intention is to be ascertained by a construction of the writing itself; though in construing the instrument regard should be had to the surrounding circumstances,

where resort to the latter is necessary to arrive at the real intention of the parties.

The instrument here in question shows upon its face that Whitlow had previously entered into a contract with J. H. Reynolds & Co. to do certain railroad work; that he desired Skinner to superintend this work, and, in consideration of Skinner's so doing, the latter was to receive one-half of the profits. There is no suggestion or intimation of a partnership between the parties; but, on the other hand, the language used would seem clearly to negative any such idea. It appears that Whitlow had an "outfit" for doing such work, and from the agreement in question it seems quite clear that Skinner was merely being employed by Whitlow to superintend the work which Whitlow had contracted to perform, and that he was to be compensated for his services by receiving one-half of the profits, in lieu of salary or wages.

In interpreting the contract, the object is to reach the actual intention of the parties—the intention expressed in the writing which they themselves employed to portray it, and consistent therewith. They seem to have used appropriate language to express their intention and meaning, and it seems quite clear that no partnership was intended or created.

Respondent lays much stress upon the provision to the effect that the profits were to be equally divided between Whitlow and Skinner, and respondent says that the sharing of profits raises a presumption, prima facie, of the existence of a partnership. In this connection we are referred to Torbert v. Jeffrey, 161 Mo. 645, 61 S. W. 823; Lengle v. Smith, 48 Mo. 276; Steckman v. Bank, 126 Mo. App. 664, 105 S. W. 674. It is true that it has been frequently held, as said in Torbert v. Jeffrey, supra, that "participation in the profits of a business raises a presumption of the existence of a partnership." But this merely means that, in the absence of proof of the actual agreement between the

parties, such presumption prima facie obtains. Necessarily this presumption is dissipated and disappears where the actual agreement of the parties is shown in evidence, from which it appears that they did not intend to form a partnership. Such intention necessarily controls. See Ellis v. Brand, 176 Mo. App. 383, 158 S. W. 708; Graf. Dist. Co. v. Wilson, 172 Mo. App. 612, 156 S. W. 23, and authorities to which we referred in those cases. And in Ellis v. Brand, supra, we said:

"Whatever may be said as to the presumption arising, prima facie, from evidence alone of an agreement to participate in profits and losses, such presumption takes flight upon proof of the complete contract existing between the parties showing that no partnership relation was intended or created."

Not only is the presumption here sought to be raised rebuttable, but, like any other presumption of this character, it does not arise or obtain when the facts themselves are at hand. The law indulges such presumptions *ex rei necessitate*, where evidence is lacking as to the actual facts, and thus it has been said:

"Presumptions may be looked on as the bats of the law flitting in the twilight but disappearing in the sunshine of actual facts." [LAMM, J., in Mockowik v. Railroad, 196 Mo. 571, 94 S. W. 262.]

See, also, Tetwiler v. Railroad, 242 Mo. 194, 145 S. W. 780; Rodan v. Transit Co., 207 Mo. 411, 105 S. W. 1061; Sowders v. Railroads, 127 Mo. App. 124, 104 S. W. 1122.

Here, the contract between the parties appears to be complete on its face. It is not doubtful, ambiguous, or uncertain in its terms, but its meaning quite definite and clear. Manifestly it does not contemplate a community of interest in the property involved in the enterprise in question, nor a joining of the parties as principals in a joint undertaking. It does not purport to give Skinner any voice in the management or conduct of the business or control over the prop-

erty used in prosecuting the same; neither does it make him anywise liable for losses incurred. The essential elements of a partnership are wanting; and the idea that the creation of such relation was intended is excluded by the fact that the contract merely purports to give Skinner one-half of the profits arising from certain work in consideration for his personal services in superintending the same. [See Sawyer v. Burris, 141 Mo. App. 108, 121 S. W. 321.]

Nor do the surrounding circumstances, so far as they appear in evidence, afford any ground for extending the meaning of the contract beyond the clear import of the language used. It is conceded that the business in question was conducted solely in the name of Warner Whitlow. It is said that this was because of personal obligations of Skinner and the latter's then financial condition. However, the evidence fails to establish that he ever exercised the power and authority of a partner in the management and conduct of the business.

In this connection we may say that the testimony, by way of depositions, of Mr. South, an attorney of Arkansas, in so far as it was admissible, is without influence. His testimony, to the effect that Whitlow and Skinner were partners in some, if not all, of the work contracted under Reynolds, is but the statement of a conclusion of the witness, and is without probative force. This, as well as the other testimony of this witness, is consistent with the existence of what is frequently termed a "partnership in the profits," and those participating in the profits of an undertaking are often referred to as "partners," where in law no actual partnership exists.

At the hearing upon Mrs. Skinner's claim before the referee, the latter permitted the respondent, Skinner, to testify to transactions and conversations between himself and Whitlow. In passing upon excep-

tions to the referee's report, quite properly the court held that this testimony was incompetent. In the trial of the cause now before us, appellant's counsel sought to introduce certain portions of the referee's report as bearing upon the question of *res adjudicata*, to show that the existence of a partnership had been litigated in the former cause. The court thereupon said that the entire referee's report would be considered as in evidence, and that the court's attention might be called to such parts as counsel deemed necessary. And appellant's counsel read therefrom a small portion of the testimony therein contained. Learned counsel for respondent now contends that appellant thereby waived respondent's incompetency, and that all of the latter's testimony contained in the referee's report is in evidence in this cause, and respondent has accordingly set forth much of this testimony in an additional abstract filed. We are not prepared to say that this testimony, even if otherwise competent, in view of the written contract between the parties, is sufficient to justify any interpretation of that instrument other than that indicated above. And it does not appear that there was any subsequent contract, or modification of the original one. But the referee's report came into evidence in this case, in the manner above stated, merely for the purpose of showing that the question of the existence of the partnership was litigated in the former case, by reason whereof it was claimed that this question was *res adjudicata* in this case; or, in other words, for the purpose of showing that the subject-matter of the two cases was identical in this respect. This, we think, did not make respondent competent to testify to any transactions or conversations with the deceased (see Jones on Evidence [2 Ed.], sec. 781, p. 981), nor constitute such a waiver as to let in any such incompetent testimony contained in the referee's report, for general purposes in the case. That the trial court did not so intend is quite evident from

the fact that thereafter respondent was sworn as a witness in his own behalf, and, upon objections interposed, he was not permitted to testify to any conversations or transactions had with the deceased. The cause was tried before the court without a jury, and it is not to be supposed that any incompetent testimony contained in the referee's report had any effect or influence upon the court, especially in view of the fact that like testimony was expressly excluded when respondent took the stand as a witness in his own behalf. We shall not, therefore, consider any such testimony in disposing of the case.

Other questions raised in this connection need not be noticed. We are not concerned with the question as to whether the relation existing between respondent and deceased was such as to constitute them partners as to third persons, but the question before us relates purely to the existence of a partnership *inter sese;* and we are of the opinion that there was no evidence to justify a finding that a partnership existed between the parties with respect to the property here involved.

III. Counsel for respondent insists that the granting of letters of administration to respondent, as the surviving partner, was *res adjudicata* as to the existence of a partnership. But counsel is mistaken as to this. It is true that respondent, as administrator, was acting under a valid appointment, good until set aside, and which afforded protection to him in administering upon the putative partnership estate. His title to the assets, however, was but a qualified one, and he held the property as trustee for those entitled to participate therein. [See Byers v. Weeks, 105 Mo. App. 72, 79 S. W. 485; Richardson v. Cole, 160 Mo. 372, 61 S. W. 182, 83 Am. St. Rep. 479.]

The authorities upon which respondent relies in this regard hold that an order of the probate court grant-

ing letters of administration cannot be attacked in a collateral proceeding. This is quite true, but the order appointing respondent as administrator is not here sought to be attacked. It may be in fact that respondent was entitled to be recognized as the surviving partner of deceased with respect to the profits, if any, arising from the undertaking in question. Respondent says that there would have been profits had all collections been made, but it appears that certain accounts carried upon Whitlow's books were not collectible, and they were charged off in the final settlement, and thus it appears that no profits were realized. The moneys on hand at the date of respondent's final settlement were the proceeds of the sale of the personalty constituting the "outfit" for doing the work in question. Under the facts disclosed by the record it appears that these chattels were not the assets of a partnership between respondent and the deceased, even though respondent may have been the surviving partner with respect to any profits that might ultimately be realized. [See Strode v. Gilpin, 187 Mo. 392, 86 S. W. 77.]

IV. The trial court quite properly sustained appellant's exception to the credit taken by respondent for the premium paid on the latter's bond as administrator. And the credits for advertising final settlement and for costs in the probate court are not in controversy.

The attorney's fee of $100 appearing in the final settlement is attacked upon the ground that the estate is not liable therefor, and as being excessive. This is an expense incurred by the administrator in the course of administration and while the property was allowed to remain in his hands. It was proper for the probate court to allow reasonable attorney's fees for legal services rendered the estate. The evidence in the record is meager as to the amount and character of the services rendered; but the reasonableness of the

allowance was passed upon by the probate judge, who was in a position to know the value of the services rendered, and we think that the allowance should not be disturbed.

The credit taken for moneys claimed to have been advanced to the estate by Skinner must be presumed to have been properly allowed by the probate court, as no evidence to the contrary appears.

As to the credit for $1321.85 for uncollected accounts, and which were charged off as uncollectible and worthless, section 240, Revised Statutes 1909, authorizes the probate court to give credit to the executor or administrator for debts charged in the inventory as due the estate—

"if the court be satisfied that such debt was not really due to the estate, . . . or that from any other cause it was impossible for the executor or administrator to have collected such claim by the exercise of due diligence."

The next section (section 241) provides that:

"The court may in its discretion order the executor or administrator to sell at public auction all notes, accounts and choses in action remaining in his hands, . . . or the court where there are no creditors of the estate may order the same to be turned over to the heirs and legal representatives of the deceased, who shall have the right to sue for and recover thereon in any court of competent jurisdiction."

The provisions of these sections are evidently applicable to partnership estates. [See section 99, Rev. Stat. 1909.]

Under the circumstances, we must presume that the probate court was satisfied that it was not possible for the administrator to collect the accounts here in question, by the exercise of due diligence. This being true, we must hold that appellant's exception to this credit is not well taken. However, since the conclusions we have reached herein necessitate a further set-

tlement and order of distribution, should the accounts in question appear to be now of any value whatsoever, the probate court will doubtless make appropriate disposition thereof.

The circuit court, upon motion, allowed to respondent an attorney's fee of $100 for defending the final settlement in that court against the exceptions filed thereto, and ordered one-half of the balance on hand to be paid to appellant, subject to the payment of this fee and the costs. Such an allowance by the circuit court for defending a final settlement has been upheld, even where certain credits were disallowed. [See Jacobs v. Jacobs, 99 Mo. 437, 12 S. W. 457; In re Estate of Meeker, 45 Mo. App. 197.] In an ordinary case we would have no disposition to interfere with an allowance for such purpose, where the executor or administrator has faithfully discharged his duties, and in the main rendered a true account of his trust, though certain items in the settlement were technically objectionable. The difficulty here is that the principal question litigated pertained to the distribution of the assets remaining in respondent's hands. Upon the facts revealed by this record we hold that the appellant is entitled to all thereof, and the question is whether she should be compelled to bear respondent's counsel fees incurred in such litigation.

The general rule is that an administrator cannot be allowed counsel fees incurred for services rendered in defense of his own personal interest, or where the litigation is in reality between beneficiaries, and not for the benefit or in the interest of the estate as a whole. [See 2 Woerner on Administration (2 Ed.), sec. 516, and authorities cited; In re Final Settlement of Peter's Estate, 128 Mo. App. 666, 107 S. W. 406.] In the main, the contest here was in reality between beneficiaries, and the result affects, not the estate, but the personal interest of respondent therein.

However, counsel fees for defending the settlement against the exceptions to credits taken by respondent therein are properly chargeable against the estate. [Jacobs v. Jacobs, supra.] There is, of course, some practical difficulty in separating such charges, or apportioning the fees, but it seems that in such a case this should be done; distinguishing between that which is properly allowable against the estate and that which the administrator should bear personally. [See 2 Woerner on Administration (2 Ed.), sec. 516; Price's Estate, 81 Pa. 263; Fox's Appeal, 125 Pa. 518, 17 Atl. 451.]

It would appear that the allowance in gross made by the circuit court was improper; and the order made in the premises should be vacated without prejudice to the right of respondent to apply to the probate court for the allowance of such attorney's fees as in the opinion of that court should be allowed for defending the final settlement against the exceptions which pertain alone to the credits taken by respondent therein.

For the reasons given above the judgment is reversed, and the cause remanded, with directions to the circuit court to enter judgment herein in accordance with this opinion and to duly certify the same to the probate court; the costs below and of this appeal to be taxed against the respondent individually. *Reynolds, P. J.,* and *Nortoni, J.,* concur.