THE STATE ex rel. LUCINDA B. ASHTON, Appellant, v. JOHN F. IMEL, Judge of Probate.

(No. 15531.)

Division One, May 31, 1912.

1. **ADMINISTRATION: Appointment of Administrator Pendente Lite: Appeal: Moot Case.** The question of whether or not, under the statutes, an appeal lies on behalf of an executrix (who has theretofore qualified and has charge of her deceased husband's estate) from an order of the probate court appointing an administrator pending a contest of the will under which she is the principal beneficiary, will not be decided, if long before the case is reached for adjudication there has been a final judgment establishing the validity of the will, for thereafter such question has lost all its life and substance.

2. ————: **Administrator Pendente Lite: Will Contest Ended.** The executrix named by the will and appointed by the court is suspended by the institution of a suit in the circuit court to test the validity of the will, and thereupon it becomes the duty of the probate court to grant letters of administration to some other person who can serve "during the time of said contest," but no longer; and upon a final judgment establishing the validity of the will, such provisional administrator *ipso facto* ceases to be administrator, and must surrender at once, and the originally appointed executrix becomes again qualified to administer the estate; and her appeal from a judgment of the circuit court refusing to mandamus the probate court to allow her appeal from an order appointing a provisional administrator, must be dismissed, for all live questions presented by that appeal have been set at rest by the judgment confirming the will.

3. **MOOT CASE.** Courts refuse to entertain jurisdiction or proceed to judgment where there is no living concrete case.

4. ————: **Dependent on Extrinsic Facts.** Where events have happened which make it impossible for an appellate court to grant effectual relief on appeal, the appeal will be dismissed, although such facts do not appear on the record, but appear extrinsically.

Appeal from Buchanan Circuit Court.—*Hon. C. A. Mosman,* Judge.

APPEAL DISMISSED.

*Fulkerson, Graham & Smith* for appellant.

*Rusk & Stringfellow* and *Charles C. Crow* for respondent.

LAMM, J.—Appeal from a judgment, *nisi,* sustaining a demurrer to an alternative writ of manda mus.

Thomas Ashton died testate in Buchanan county in 1906, seized of a considerable estate. His will, probated in common form, nominated his widow, Lucinda B. Ashton, executrix, who was also the principal beneficiary, and is relator in this suit. Presently, she took upon herself the burden of administration. Afterwards Mrs. Penfield (a daughter of Thomas Ashton and relator) sued in the Buchanan Circuit Court to break the will, making relator a party defendant with others. These things being done, afterwards, on May 19, 1908, Mrs. Penfield filed an application in the form of a petition in the probate court of Buchanan county, asking the appointment of an administrator *pendente lite.* Therein she alleged, *inter alia,* that she had instituted a suit to contest the will and had made relator "and the other proper parties" defendants in the suit; "that summons had been issued and is in process of service by the sheriff of this county and your petitioner is proceeding with said case and contest in due course of law." Relator appeared to that application and filed an answer assigning reasons against such appointment. One was the pendency of a suit by Mrs. Penfield to set aside a settlement made by her with relator and the other heirs of the estate, acknowledging receiving various items of money and property, aggregating the rise of $22,000 in value, and

in which suit she prayed that relator be required as executrix to take charge of the notes, securities and properties mentioned in the settlement paper. By taking such position in that suit it is claimed in the answer that her present position is inconsistent with the former and with the appointment of an administrator *pendente lite*. Another was that the will contest was not brought in good faith for the purpose of contesting the will, but merely to harass relator and deprive her of the control of the Ashton estate until the determination of the will contest. It is claimed in the answer that to appoint an administrator *pendente lite* under those circumstances would be for the probate court to loan itself to Mrs. Penfield as an instrument of injustice and fraud. Other averments of the answer were that the will was valid, bore date 1878, when testator was fifty-two years old and in full mental and physical vigor and one of proponents was an infant of tender age, and another a non-resident; and that codicils were made long afterwards which had the effect to *increase* the holdings of Mrs. Penfield in the estate of her father under his original will. Another reason assigned for refusing to appoint an administrator *pendente lite* was that all the devisees under the will were not made parties to the contest suit.

On hearing, on May 27, 1908, the application was adjudged granted, and John L. Zeidler was appointed administrator *pendente lite*. Thereat on the same day relator applied for an appeal to the circuit court from that order and judgment, making the statutory affidavit and asking that the amount of the appeal bond be fixed. Refusing to fix the penalty of the bond, the probate court refused an appeal. Thereupon relator sued out of the Buchanan Circuit Court an alternative writ of mandamus to compel the probate court to grant an appeal, the writ reciting all the foregoing facts and citing the probate judge, Imel, to show cause. Ap-

pearing to that writ, Judge Imel demurred, because:
(1) The writ did not state facts sufficient to consti-
tute a cause of action; (2) upon all the facts stated in
the writ, relator is not entitled to relief by mandamus;
and (3) upon all the facts stated in the writ, relator
is not entitled to appeal from an order made by a
probate court appointing an administrator of an es-
tate. Presently the demurrer was sustained, final
judgment denying an absolute writ followed, and re-
lator appealed to the Kansas City Court of Appeals.
That court was of opinion jurisdiction was lodged
with this court and certified the case here.

The foregoing case is one of three, all of them
logically related in origin and ultimate purpose, sub-
mitted on briefs at the same time in this court, bearing
the serial docket numbers, 15528, 15529 and 15531.

Case number 15528 is this: A day or so after the
appointment of Zeidler provisional administrator,
the probate court at the instance of Mrs. Penfield en-
tered an order revoking an order of distribution made
nearly a year before whereby the executrix was au-
thorized to make distribution under the will to herself
as legatee of certain shares of corporate stock belong-
ing to the Ashton estate, which distribution she made,
and filed her receipt therefor. As part of the order
so revoking the executed order of distribution she was
commanded to turn over to Zeidler said shares. There-
upon the executrix sought and was refused an appeal
from that order. She then sued out of the circuit court
an alternative writ of mandamus citing the probate
court to show cause why he refused to grant her an
appeal. Such steps were taken in that case as resulted
in the award of an absolute writ, and from the judg-
ment awarding such writ the probate judge appealed
here. So much for case number 15528.

Case number 15529 is this: Pending said appli-
cation for a mandamus, Mrs. Penfield had her mother
cited in the probate court for contempt in refusing to

turn over the mentioned corporate stock to the provisional administrator, and leading to her ultimate confinement in jail if she continued recalcitrant. Thereupon the mother applied to the circuit court for a writ of prohibition to prohibit the enforcement of the foregoing order until such time as her right to an appeal be determined and fixed. A preliminary rule issuing, on final hearing a permanent writ was adjudged to go. From that judgment the probate judge appealed. So much for case number 15529.

In the briefs of counsel for Mrs. Ashton, to defeat the appeals in the last two cases, it is suggested our records show that the will contest has long since been finally disposed of by a judgment entered below and affirmed in this court sustaining the will of Thomas Ashton with its several codicils; wherefore (they say) there is no substance or life left in those appeals. Turning to our records on that suggestion, they show that Mrs. Penfield's suit to break her father's will was tried in Buchanan county on the 17th of December, 1908, before a jury in Judge Mosman's division of the circuit court and a verdict came in finding the paper writings (purporting to be the will and codicils of Thomas Ashton, read in evidence, and theretofore probated ex parte in common form) constitute his last will. On the heels of that verdict, it was adjudged those writings (setting the will and codicils forth) be probated in solemn form as his last will and testament and that contestees recover their costs against contestant. From that judgment, Mrs. Penfield appealed to this court with the result that the judgment was affirmed here on February 2, 1910, for failure to perfect her appeal.

In the instant case the question presented by relator's counsel is single and blunt, viz.: Under our statutes, does an appeal lie on behalf of an executrix (who has theretofore qualified and has charge of the estate of her testator) from an order of the proper

probate court appointing an administrator pending a will contest—such executrix being testator's widow, a beneficiary under the will and a party defendant to the contest?

But we are of opinion there is a preliminary question demanding settlement before the question stated by counsel is reached. That preliminary question springs on the disclosures of our own records, to which our attention has been called by relator's counsel as her representatives in the two companion cases. It may be stated in this way: The will contest having been long since finally determined and the validity of the will established once for all, has not relator's right to a writ of mandamus to coerce an appeal, if any such right she had (which putative right she is seeking to enforce in her present appeal), become a mere barren or speculative claim, a mere abstract or empty, technical right? For have not events happened making useless an absolute writ of mandamus if we went on and reversed the judgment and sent the case down with directions or for a new trial as she asks us to do? Or, if she got her writ, of what avail would it be to her?

On those questions we make these observations:

(a) In a suit to test the validity of a will (or to prove a rejected will) an issue is to be made up below whether the writing produced be the will of the testator. This issue must be tried by a jury, or (if none be required by either party) by the court. [R. S. 1909, sec. 555.] The verdict of the jury or the finding and judgment of the court is final on such issue, saving the right of granting a new trial, as in other cases, and to either party an appeal in matters of law. [*Ibid.*, sec. 556.] If the validity of a will be contested under the foregoing statutes, the further statutory command is that letters of administration shall be granted ''during the time of such contest'' to some ''other person.'' This ''other person'' is directed

by the statute to take charge of the property and administer the same according to law, under the direction of the court, "and account for and pay and deliver all the money and property of the estate to the executor or regular administrator when qualified to act." [R. S. 1909, Sec. 21.] The statutory phrase, "during the time of such contest," has been construed to include the time it is pending on appeal (State ex rel. v. Guinotte, 156 Mo. l. c. 517 *et seq.;* Carrol v. Reid, 158 Mo. 319)—the appeal operating as an extension of the suit, even without a supersedeas bond.

By the inherent reason of the thing, the right of an executor or administrator *c. t. a.* to administer in accordance with the terms of the will, *i. e.,* the wish of the testator, should be suspended during a contest. This, on the accepted theory that a will contest in this jurisdiction is in the nature of an appeal from the formal probate in the probate court, jurisdiction being lodged by the contest in the circuit court to establish the validity of the will in solemn form. It conclusively follows from that theory that such contest destroys the present efficacy of the mere formal probate in the probate court. To all intents and purposes it is thereby vacated and there is left a mere writing or scroll, but no will, until such time as it is proved anew in the contest proceeding. For such reasons the statutes referred to contemplate that the functions of the executor, who acts under the will and by virtue of his appointment in court, are to be suspended, and a competent provisional administrator, in the person of a neutral or indifferent person, is to be appointed; but mark the fact, for thereon weighty matter hangs, his appointment is special and limited. It is for that turn only, temporary and *"during the time of such contest."* By analogy, his office is said to be in the nature of a receivership; and, when the contest is at an end and the validity of the will established, his term of office expires and his right to act ends. The executor or regu-

lar administrator *c. t. a.* becomes again qualified to act in the administration of the state. So, when that time comes the provisional administrator is *functus officio.* He must step down and out *instanter,* settle and turn over "the money and property of the estate to the executor or regular administrator," who, by that token, comes into his own again. [R. S. 1909, sec. 21, supra; RoBards v. Lamb, 76 Mo. l. c. 194; RoBards v. Lamb, 89 Mo. l. c. 311; State ex rel. v. Moehlenkamp, 133 Mo. l. c. 138; Lamb v. Helm, 56 Mo. l. c. 432; Hawkins v. Cunningham, 67 Mo. 415.]

(b) The premises kept in mind, when on February 2, 1910, the Ashton will contest ended by finally establishing the validity of the will, relator as executrix was repossessed with the clear right to plenary possession of all remaining personal estate of Thomas Ashton to administer thereon in strict conformity to his wishes and the powers of which she was made donee by his will. All she had to do was to produce in the probate court the proper evidence of the judgment finally establishing the will. When that was done Zeidler's right to possession as temporary administrator ceased *ipso facto* by virtue of the written law; and the duty of the probate court was to give effect to the mandate of the law by appropriate orders. While we have no evidence before us that an exemplification of the final judgment solemnly probating the will was filed in the probate court and that at the foot thereof appropriate steps were taken there by Mrs. Ashton to reinstate herself in her former position as executrix, with the right to possession of the estate, yet we are not left at sea in such emergency. We can presume, in the absence of a contrary showing, that the statutes were complied with, that such duty was performed and that things were rightly done in their order. The courts indulge such presumptions and apply them when there is need for it. There is a homely saying, The sweeter the cider, the sourer the vinegar.

It points a melancholy fact when in family quarrels trust turns to distrust, and the tender regard of blood kin turn to dissension and acid. Will contests are usually earmarked with exceeding bitterness and activity. Certainly in such a case as this we have no call to assume that relator, armed with the advice of alert counsel, would omit an open move on the legal chess board so transparently to her advantage as reclothing herself with the right to possession of the estate, when thereby a person deemed by her to be an intruder in her office, would be ejected without more ado. Assuming then for the purposes of this case, that Zeidler is no longer administrator *pendente lite* and is at this time asserting no right to the possession of the estate of Thomas Ashton—assuming further that relator, who retained possession in fact of the shares of corporate stock (as shown by this record), has been for two years gone legally entitled to possession of such stock by the judgment establishing the validity of the will, it becomes plain that this case is one for mere argument for the sake of it—a moot case. As Ben Jonson noticed several hundred years ago, a moot case bears the relation to a real lawsuit that fencing does to fighting. The subject-matter of the litigation being disposed of, it is clear that the substance and life are gone out of the case, and nothing is left but an empty, abstract and technical right, the decision on which may be useful in some other case, not in this; for if we held she had a right to an appeal from an order appointing Zeidler administrator *pendente lite* and that the court erred in refusing her an absolute writ of mandamus, we would reverse that judgment with directions to issue the writ. When the writ issued her appeal will be allowed. When her appeal thus allowed comes up for a trial anew what would it avail? At best it could only determine that a man out of office because his term had expired, never had the right to be in; that a man who claims and could

claim no present right to possession of an estate, should not have possession. In that situation the adage has play, viz.: The mountain labors and brings forth a mouse. We are of opinion the appeal should be dismissed.

(c) That conclusion is soundly buttressed on reason and authority. So far as my research teaches me, I find that courts refuse to entertain jurisdiction or proceed to judgment where there is no living concrete question. They do not sit to determine who has the better of the argument on a mere abstract and speculative question of law, but, when advised that such stage is reached, they stay their hand. They sit to adjudicate the rights of parties in real controversies where their judgments can do some good by being carried into effect. And where, as in this case, events have happened making it impossible for an appellate court to grant effectual relief on appeal, the appeal will be dismissed, although such facts do not appear on the record, but appear extrinsically. So, an absolute writ of mandamus will not go when it would be vain and nugatory or of no benefit to relator, the object of a writ being to prevent a failure of justice. [Mills v. Green, 159 U. S. 651; Lord v. Veazie, 8 How. 251; Bartemeyer v. Iowa, 85 U. S. 129; Security Mutual Life Insurance Co. v. Prewitt, 200 U. S. 446; Gormley v. Day, 114 Ill. 185; Aff v. Hopkins, 57 Ill. App. 529.] Missouri appellate courts have often applied the doctrine announced. [State ex rel. v. Rodman, 43 Mo. l. c. 260; Kalbfell v. Woods, 193 Mo. 689 et seq. and cases cited; Cape Girardeau, etc. R. R. v. Bridge Company, 215 Mo. l. c. 296 et seq. and cases cited; Wait v. Railroad, 204 Mo. l. c. 505 et seq.; State ex rel. v. Police Commissioners, 80 Mo. App. l. c. 224 et seq.]

The law is so firmly settled and the exposition thereon is so abundant, as seen in the array of cases, supra, that it would be space and time misapplied to

quote from them. The student in jurisprudence who, not content with its bald announcement, yearns to trace the law to its sources and fortify his mind with precedents and exposition, may consult those cases.

In the foregoing view of the case, the question discussed by counsel is reserved.

Let the appeal be dismissed. It is so ordered. All concur.