SILAS W. DOOLEY, Respondent, v. NELLIE WELCH and DAISY STANLEY, Administratrices de bonis non with the will annexed of the Estate of J. J. RYAN, Deceased, Appellants.

**Kansas City Court of Appeals, June 30, 1913.**

1. **ATTORNEY AND CLIENT: Liability of Estate: Principal and Agent.** When an attorney contracts for professional services with an administrator, prima facie, he contracts on the credit of both the agent and principal. The agent becomes responsible to him for his reasonable charges for services rendered which are for its benefit.

2. **————: Liability: Error.** An attorney is not liable for being in error as to a question of law upon which reasonable doubt may be entertained by well-informed lawyers; nor is he answerable for error in judgment upon points of new occurrence or of nice or doubtful construction.

3. **ADMINISTRATOR: Cost of Litigation.** An administrator or executor, having acted in good faith and with ordinary prudence, is entitled to be credited in his accounts for all costs he may have been compelled to pay in litigation affecting the estate in his charge, and his right to credit therefor does not depend upon the favorable issue of the litigation but only upon good faith in prosecuting or defending.

Appeal from Bates Circuit Court.—*Hon. C. A. Calvird,* Judge.

AFFIRMED.

*Thos. J. Smith* for appellants.

(1) No recovery for services in the assessment case in which appellant was allowed two hundred dollars should have been allowed. There was admittedly no special employment of the plaintiff by defendants, nor directions from defendants to plaintiff to perform this service. The services were of no benefit to the estate, but a positive detriment in costs and expenses. Nichols v. Reyburn, 55 Mo. App. 5; State ex rel. v.

Walsh, 67 Mo. App. 353; Grove v. Reynolds, 100 Mo. App. 59; Matson & May v. Pearson, 121 Mo. App. 138. (2) The facts as to which plaintiff stipulated and on which the assessment case was heard in the United States Court, showed conclusively as a matter of law the defense of that case could not be successful. U. S. Compiled & Annotated Statutes, vol. V, p. 109, sec. 5154; Casey v. Galli, 94 U. S. 673, 24 L. Ed. 168; Bank v. Haskins, 79 Fed. (C. C. A.) 51; Keyser v. Hitz, 133 U. S. 150, 33 L. Ed. 531, 536; Pauly v. Land & Trust Co., 165 U. S. 622, 41 L. Ed. 850. (3) The plaintiff was required to know the settled rule of law governing the powers of State banks to be converted to national bank under the National Banking Act and the consequent liability of its shareholders for double assessment thereon. 3 Am. & Eng. Ency. Law (2 Ed.), p. 380; 4 Cyc. 964, 965; Goodman v. Walker, 30 Ala. 482; s. c., 68 Am. Dec. 134, 138; Loan & Fund Assn. v. Friedley, 123 Ind. 143; s. c., 23 N. E. 1075, 7 L. R. A. 669, 670. (4) If the plaintiff failed in this, his lack of professional knowledge, skill or diligence may be set up as a defense to his action to recover for the services rendered. Bracey v. Carter, 12 Am. & Eng. Ency. Law, 373; Bowman v. Tallman, 40 How. Pr. 1; Hopping v. Quin, 12 Wend. 517; Roe v. Stanton, 7 Grant, Ch. (U. C.) 389.

*Silas W. Dooley* for respondent.

(1) The court should affirm this judgment—because appellant's abstract of the record shows that it does not contain all the evidence adduced at the trial. Henri v. Grand Lodge, 59 Mo. 581. (2) Appellant's abstract is merely an abbreviated narrative of the evidence favorable to their contention as shown in respondent's abstract; it also omits most of the exhibits in evidence, all necessary for a correct understanding of the issues and the findings of the court. Zweigardt

v. Birdseye, 51 Mo. App. 462; Nelson v. Hall, 104 Mo. App. 466; Drug Co. v. Saunders, 70 Mo. App. 221.

JOHNSON, J.—Plaintiff, an attorney at law, sued the defendants administratrices in equity to enforce a demand for fees earned in the service of the estate and for which it is alleged the estate is liable as for expenses of administration. The demand consists of fifty-two items aggregating $2593.52, and credits amounting to $1085 are acknowledged in the petition, reducing the alleged indebtedness to $1508.52, for which plaintiff prays judgment and that the judgment be classified as an expense of administration. The answer interposes a number of defenses, the nature of which will be disclosed in the statement and opinion. The court rendered a decree which included a complete finding of facts and resolved the issues of law and fact in favor of plaintiff but reduced the total net demand from $1508.52 to $825.52. It was further adjudged "that the defendants pay to the plaintiff out of any funds now in their hands, or that may hereafter come into their hands, belonging to the funds of said estate of J. J. Ryan, deceased, the sum of eight hundred eight and 52/100 dollars with interest at six per cent from —— 1910, and cost of suit, to be charged to the estate, and paid for as a part of the expense of the administration thereof." Defendants appealed.

In July, 1898, J. J. Ryan died testate in Bates county, leaving as his heirs his widowed daughters, Mrs. Caroline Morrison and Mrs. Sarah Adaline Stanley and his adult grandchildren, W. R. Morrison, J. R. Morrison, Nellie Welch, John L. Stanley and Daisy Stanley. The estate consisted of stocks in banks and corporations, secured and unsecured notes and other evidences of debt of the estimated value of $80,000. The will was probated in Bates county August 16, 1898, and F. J. Tygard, J. C. Clark and the testator's grandson, Joseph R. Morrison, were appointed execu-

tors. They gave a bond in the sum of $50,000 and acted as executors until February, 1907, when they were removed and P. H. Holcomb was appointed administrator *de bonis non* with the will annexed. Two months later Holcomb was removed and defendants Nellie E. Welch and Daisy Stanley were appointed administratrices *de bonis non* with the will annexed. They qualified and took charge of the estate and are still the administratrices thereof. The evidence supports the finding of the court "that when said estate was turned over to the defendants as administratrices it was in a confused condition and subject to considerable litigation and in need of legal services and advice for the preservation and protection of its rights, property and funds."

The executors Tygard, Clark and Morrison had been removed for mismanagement and had left the affairs of the estate in a tangled condition. At the death of Ryan they were respectively president, cashier and bookkeeper of the Bates County Bank, a State bank in which Ryan held thirty-four shares of stock of the par value of $100 per share. Sometime after the death of Ryan and during the period of their executorship, they caused the bank to be reincorporated as a national bank. Shortly before their removal as executors the bank failed and its assets passed into the hands of a receiver. Neither of the administratrices lived in Bates county during the present administration of the Ryan estate. Mrs. Welch has lived in Kansas City and Daisey Stanley has resided in St. Louis a part of the time and in Louisiana the remainder. Plaintiff is a lawyer residing and practicing in Bates county.

We approve the finding of the court "that at or about the time of the appointment and qualification of the defendants as administratrices of said Ryan estate they employed plaintiff to advise and render such legal services as might be required in the administering of the affairs of said estate under said will, and for that

purpose all the papers belonging to said estate were placed in his charge; that plaintiff continued in such service from the —— day of April, 1907, to the —— day of April, 1910, when he was discharged therefrom by the defendants without any fault or dereliction of duty on his part having been assigned therefor, and all the papers of said estate in his charge were delivered to the defendants at their request.''

Counsel for defendants contend that plaintiff was employed not by the administratrices to act as the general attorney of the estate but by Daisy Stanley as her attorney but we think the weight of the evidence supports the finding of the court to the contrary and also the further finding ''that plaintiff's employment was general in its nature; that there were no specific instructions from the defendants personally in regard to the items set out in plaintiff's account . . .. but the court finds that said services were rendered in the usual course of plaintiff's employment and defendants, either themselves or through their advisers had knowledge of the same. The court further finds that defendant had knowledge of the trips made by plaintiff in said suits prior to April 5, 1909, as the service was set out in plaintiff's bill for expenses of each trip, and defendants paid the same without protest or claim that the service mentioned or the expense therefor was not beneficial or not necessary for the protection of the funds of said estate.''

When the Bates County Bank was converted into a national bank the executors of the Ryan estate who, as stated, were managing officers of the bank, caused the thirty-four shares of stock owned by the estate to be converted into a similar number of shares in the national bank and the estate appeared on the books of the bank as the owner of said stock when the receiver took charge of its assets. The stock had been fully paid and had the business been continued as a State bank there would have been no stockholders' liability

but if, in fact and law, the estate had become a stock-holder in the national bank, it had incurred a liability on the stock equal to the par value thereof.

The receiver of the bank in March, 1907, while Holcomb was administrator, brought suit in the Fed-eral court at Kansas City against the estate to re-cover an assessment of $3400, on the stock in the bank standing in the name of the estate. The court found "that the circumstances and conditions surrounding the possession of said stock by said estate of said Ry-an, when taken in connection with the directions in said will, and the fact that the executors were the man-aging officers of said bank, as well as other considera-tions connected therewith, were such that it became the duty of the representatives of said estate to de-fend said action, and if possible to prevent a judgment being had herein against the trust funds in their charge. That plaintiff under his general employment took charge of said suit, and during the progress there-of rendered certain services that were necessary in the defense of the right, property and funds of said estate. That said suit was tried twice and judgment rendered against the estate for the full sum sued for and in-terest. That the plaintiff filed a motion in arrest and for a new trial and was granted ninety days to-wit in which to file bill of exceptions with a view of appealing the same, but said case was not appealed."

The fees claimed by plaintiff on account of the services rendered in the defense of this case amounted to $320, but the court found that the reasonable value of the services was $200. The court further found "that under the circumstances the defendants were jus-tified in resisting the claim made in that suit, and the services of plaintiff were necessary in the defense thereof." The evidence shows and the court so found, that C. A. Braley, a lawyer of Kansas City was em-ployed by defendants as local counsel to assist plain-tiff in the defense of that suit. Afterward Braley was

employed to assist plaintiff in another suit in which the estate was interested in Kansas City and received $500 paid to him for the estate in compromise thereof. Having received no compensation for his services in these two cases, he applied this money on his fees.

Counsel for defendants attack the allowance to plaintiff on account of services for defending the assessment suit on a number of grounds. The first point,. that "there was admittedly no special employment of the plaintiff by defendants, nor directions from defendants to plaintiff to perform this service," is answered with the statement that the services were rendered by plaintiff under his general employment by defendants to take charge of all the litigation and business affairs of the estate requiring the services of an attorney. The evidence shows beyond dispute that defendants knew that plaintiff and Braley were defending the suit and approved of the defense thereof. They acted on the theory that their duty as administratrices required them to interpose a defense and not to allow judgment by default to go against the estate. But it is argued that since the services were of no benefit to the estate there can be no liability to pay for them.

It is said in State ex rel. v. Walsh, 67 Mo. App. 353: "An administrator can subject the estate to a charge for necessary legal services rendered to the estate at his request by another. [Gamble v. Gibson, 59 Mo. 585.] Says ROMBAUER, P. J., in Nichols v. Reyburn, 55 Mo. App. 7: 'Such claims are expenses of administration and, if reasonable, must be allowed by the probate court against the estate, as diminishing the assets of the estate in the hands of the statutory trustee to that extent. Such being the law, we hold that the attorney, in contracting for professional services with an administrator, prima facie contracts on the credit of both the agent and principal. The agent becomes responsible to him to the extent of the contract which he makes, without regard to whether it is

reasonable or not, or for the benefit of the estate or not, the estate becomes responsible to him for his reasonable charges for services rendered which are for its benefit.' '' [See, also, Grove v. Reynolds, 100 Mo. App. l. c. 59; Matson v. Pearson, 121 Mo. App. l. c. 138.]

The question of whether services rendered by an attorney for an estate at the request of the administrator are for the benefit of the estate is not to be determined solely by the results of the services. In accepting employment to prosecute or defend an action a lawyer does not become an insurer of the success of his professional efforts. He does undertake to act with the care, industry and judgment of a lawyer of reasonable skill and capacity and as long as he so conducts himself his services are for the benefit of his client whether they result in failure or success. ''An attorney is not liable for being in error as to a question of law upon which reasonable doubt may be entertained by well-informed lawyers; nor is he answerable for error in judgment upon points of new occurrence or of nice or doubtful construction.'' [3 Am. & Eng. Ency. of Law (2 Ed.), 380.]

And as to administrators the rule is well settled ''that an administrator or executor, having acted in good faith, and with ordinary prudence, is entitled to be credited in his accounts for all costs he may have been compelled to pay in litigation affecting the estate in his charge, and his right to credit therefor does not depend upon the favorable issue of the litigation but only upon good faith in prosecuting or defending.'' [Woerner's Adm. Law of Admin. (2 Ed.), star p. 1149.]

Where an administrator in good faith and with ordinary prudence employs a lawyer to defend an action prosecuted against the estate and the lawyer defends the case in good faith and with reasonable care and professional skill and judgment, his employment.

in law is for the benefit of the estate. To hold otherwise would be to place the estates of deceased persons at a great and unnecessary disadvantage, since reputable lawyers would not care to accept employment that would put them in the position of an insurer of their client's lawsuit. We do not agree with defendants that the facts of the case "showed conclusively as a matter of law the defense of that case could not be successful." The executors of the will who, as stated, were officers of the bank, placed themselves in a very questionable position in converting stock on which there could be no liability into stock on which there could be double liability. There was room for contending that in so doing they not only violated express provisions of the will but acted fraudulently and without authority of law in a way to make the banking corporation a party to the wrong. The receiver stood in the shoes of the bank and could assert no greater rights than those the bank had acquired and passed on to him. With so much in the facts and circumstances to suggest illegality and even fraud in the transaction we think the administratrices would have been derelict in their duty had they allowed judgment to go against the estate by default. They acted properly in giving their approbation to the defense of the suit and their present position which, in effect, is self-condemnatory is not well grounded.

There is no merit in the argument that the employment of plaintiff and Braley was joint and not several. Plaintiff rendered services under his general employment while Braley was specially employed to assist him. Nor was Braley the agent of plaintiff. He was employed by defendants, and the estate, not plaintiff, became liable for the payment of his fees. It may be that he has overpaid himself. We express no opinion on that subject, but if he has, that is a matter between defendants and him without effect upon the rights of plaintiff to reasonable compensation. The

finding that plaintiff is entitled to an allowance of $200 for the services under consideration is approved.

We have gone thus extensively into this branch of the case for the reason that the points involved in it which we have discussed and determined settle the principal controversies relating to other items of the account. We shall not go into them, but content ourselves with saying that all of the services for which plaintiff seeks to recover were rendered under his general employment, were known to and approved by defendants and the estate on the whole was greatly benefited by them. None of the services was performed under joint contract with lawyers specially employed to assist plaintiff and the values placed by the court on the numerous items of service are reasonable and just. Plaintiff did not abandon the "Stanley note case" which was pending in court at the time of his discharge by defendants and is entitled to receive reasonable compensation for his services in that case which were performed under his general employment and not under a joint employment with the local counsel engaged by defendants to assist him. The learned trial judge determined the issues of the case and rendered a righteous judgment.

Affirmed. All concur.